**Rafael ROSALY et al.,**
**Plaintiffs-Appellees,**

v.

**Rafael L. IGNACIO et al.,**
**Defendants-Appellants.**

**No. 78–1217.**

United States Court of Appeals,
First Circuit.

Heard Nov. 9, 1978.
Decided Feb. 23, 1979.

---

Americo Serra, Asst. Sol. Gen., Dept. of Justice, Rio Piedras, P. R., with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief, for appellants.

Hector M. Laffitte, Hato Rey, P. R., with whom Jesus M. Hernandez Sanchez, San Juan, P. R., and Laffitte & Dominguez, Hato Rey, P. R., were on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Defendants-appellants Rafael L. Ignacio, Roberto Lugo Torres,[1] and Hamilton Ramierz appeal a decision of the district court which found that they conspired together to bring about the resignations of plaintiffs-appellees Rafael Rosaly, Abraham Alvarez, Andres Alvarado Cordero, and Vincente Guzman in violation of their rights to due process of law, that the terminations were politically motivated and violated the plaintiffs' first amendment rights to political association protected by the fourteenth amendment. The complaint was brought under 42 U.S.C. §§ 1983 and 1985; jurisdiction was premised on 28 U.S.C. § 1343.[2]

---

1. Roberto Lugo Torres died on October 6, 1977.

2. We question whether jurisdiction for the due process claim was properly pleaded, as plaintiffs cite only 28 U.S.C. § 1343 without mention of 28 U.S.C. § 1331.

## THE FACTS

In 1972, the incumbent New Progressive Party lost the election in Puerto Rico to the Popular Democratic Party. All four of the plaintiffs are members of the New Progressive Party and all three defendants are members of the Popular Democratic Party.

The Highway Authority, where all plaintiffs were employed, was created as a public corporation by state law in 1965. P.R. Laws Ann. tit. 9 § 2001 *et seq.* In 1973, under a reorganization plan, the legislature created the Department of Transportation and Public Works to oversee the Highway Authority. P.R. Laws Ann. tit, 3, App. III §§ I–VIII. Section V abolished the Board of Directors of the Highway Authority and provided that the powers and duties of the Highway Authority were to be discharged by the Secretary of Transportation and Public Works.

Defendant Ignacio was appointed Secretary of Transportation and Public Works in 1974. In about August of 1975, Ignacio created a five person confidential committee to study the serious financial situation of the Highway Authority. This committee presented Ignacio with three alternative recommendations in mid-January of 1976, suggesting the administrative integration of the Highway Authority with the Department of Transportation and Public Works as the best option.

On February 5, 1976, Ignacio called a staff meeting of the Highway Authority announcing the integration of the Authority with the Department of Transportation and Public Works. He requested that all twenty-seven staff employees submit their resignations so that he would have flexibility in this task. The four plaintiffs complied with this request, as did the other employees. Ignacio accepted plaintiffs' res-ignations, along with those of three other employees, and did not reappoint them elsewhere. Plaintiffs maintained that they tendered their resignations on the understanding that they would be assigned to another post. Ignacio and several other witnesses testified that Ignacio made no guarantee to keep any of the Highway staff at the time that he requested the resignations.

Plaintiffs' action sought reinstatement to the Highway Authority as well as compensatory and punitive damages. The parties agreed to have the jury decide the issue of damages and act in an advisory capacity as to the liability issue. The district court tried all claims simultaneously and submitted special interrogatories to the jury for advisory findings. After a seven day trial, the jury returned a verdict on October 29, 1976, finding that plaintiffs were unlawfully dismissed from the Highway Authority for political reasons and that they were regular permanent employees whose termination of employment was not at the discretion of the Secretary of Transportation and Public Works, defendant Ignacio. Each plaintiff was awarded $100,000 as compensatory damages and $25,000 for punitive damages. The district court rendered its findings of fact and conclusions of law on March 31, 1978, agreeing with the jury's advisory verdict and ordering reinstatement. It *sua sponte* remitted the compensatory award to $50,000 but let the award of punitive damages stand. The money judgment was stayed pending appeal, but not the injunctive relief.[3] The district court also ordered the defendants to pay plaintiffs $15,000 for attorney's fees, noting that defendants filed no objection when plaintiffs requested the award and that defendants appeared "obstinate" to the court.

---

**3.** The district court stated in its order that it would not suspend the injunction pending appeal, as in its view, the injunction had "become moot since plaintiffs have already been reinstated to their former positions." Plaintiffs relied on this determination in both their brief and oral argument, pressing us to review only the issue of liability, as they, too, considered that their reinstatement mooted the equitable issue. We disagree. The executive director of the Highway Authority prefaced each reinstatement letter, "In accordance with the decision of the Federal Court in Civil Case 76–516, I wish to inform you that you will be reinstated . . ." By complying with the district court's order, the defendants in no way abandoned or mooted the reinstatement issue and specifically pressed and argued it on appeal.

Normally, we would not treat jury instructions to which as here, no specific objections were made. However, since these instructions were for advisory purposes only and thus in the nature of findings and reflected the district court's understanding of the applicable law and since there must be a new trial, we feel that comments on both the instructions and the findings are in order.

## THE FIRST AMENDMENT ISSUE

In *Garzaro v. University of Puerto Rico*, 575 F.2d 335, 339 (1st Cir. 1978), we noted the pendency of a case before the Supreme Court which we thought might clarify the legal standard applicable to cases involving an employer's alleged retaliation for an employee's exercise of his/her first amendment rights. That case has now been decided and, in the light of *Givhan v. Western Line Consolidated School District*, —— U.S. ——, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), we must remand.

*Givhan* deals with the refusal of a school district to renew the contract of a black English teacher. She sought reinstatement on the grounds that the nonrenewal of her contract violated the rule laid down in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969), *rev'd and remanded sub nom. Carter v. West Feliciana Parish School Board*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970), *on remand*, 425 F.2d 1211 (5th Cir. 1970), and infringed her rights of free speech secured by the first and fourteenth amendments. The district court in *Givhan* held that the teacher was terminated in violation of the first amendment, concluding that "the primary reason" for the school district's failure to renew her contract was her criticism of the policies and practices of the school district and the school to which she was assigned to teach. The court of appeals reversed, but the Supreme Court found that in so doing, the appellate court reached its decision under an erroneous view of the first amendment. Additionally, and of importance in the instant action, the Supreme Court held that, although the case

was tried before the decision in *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), in light of that case, a remand was necessary because the school district presented a permissible reason for its action in discharging the employee. The district court's finding that the teacher's criticism was the "primary" reason for the school's failure to hire her was not sufficient in the eyes of the Court. The Court explained "it [the district court] did not find that she would have been rehired *but for* her criticism. Respondents' *Mt. Healthy* claim called for a factual determination which could not, on this record, be resolved by the Court of Appeals." *Id.* —— U.S. at ——, 99 S.Ct. at 697 (emphasis in original, footnote omitted). The Court's reference to the school district's "*Mt. Healthy* claim" was shorthand for the school district's argument that it presented legitimate, constitutionally unprotected reasons for the nonrenewal of the teacher's contract. Among the reasons proffered by the school district for not renewing Ms. Givhan's contract were her refusal to administer standardized tests to pupils, an announced intention to be uncooperative, an antagonistic attitude towards the school administration, and downgrading the papers of white students. *Givhan, supra*, —— U.S. at ——, nn.1 & 2, 99 S.Ct. 693.

The case before us presents a similar first amendment issue. Although the case was tried in 1976, prior to *Mt. Healthy*, the district court's opinion was entered subsequent to it in 1978, and we find no mention of that decision in the court's opinion or in the briefs.

■ The defendants maintained throughout the proceedings that the plaintiffs' terminations were necessitated by a financial crisis in the Highway Authority and were not due in any way to their political affiliation. This, then, was a *Mt. Healthy* claim. The court did not adequately treat this issue. It included in its findings of fact plaintiffs' compilation of employee statistics which indicated that after plaintiffs' discharges the Department of Transportation granted a number of raises

and promotions. We acknowledge that circumstantial evidence may be used to show discriminatory motive in a patronage dismissal case. *Gabriel v. Benitez*, 390 F.Supp. 988, 993 (D.P.R.1975), *aff'd sub nom. Rivera Morales v. Benitez de Rexach*, 541 F.2d 882 (1st Cir. 1976). However, the recital of these numbers alone does not establish conclusively a discriminatory motive, especially in light of the defendants' alleged economic justification for these increases, *i. e.*, two of the employees who received salary increases did so because these employees took on additional duties after the integration, resulting in an overall savings in the department. But even if such evidence supports a finding of discriminatory motive, there was, as far as the record shows, no application of the *Mt. Healthy* test.

Although the record is lengthy, we do not feel that it provides the proper basis for us to make the factual determination called for in *Givhan, supra*, —— U.S. at ——, 99 S.Ct. 693. The *Givhan* decision adopted the procedural guidelines set out in *Mt. Healthy, supra*, 429 U.S. at 287, 97 S.Ct. 568, but articulated more precisely the test to be applied. Under *Givhan*, the initial burden is upon plaintiffs to show that their conduct was constitutionally protected. Plaintiffs must next establish that this conduct was a "substantial factor" or a "motivating factor" in defendants' decision to discharge them from the Highway Authority.

If that is proven, the defendants have the burden to show by a preponderance of the evidence that they would have reached the same decision notwithstanding the protected conduct. If the plaintiffs are to recover, the court (or jury) must expressly find that plaintiffs would not have been discharged "but for" the constitutionally immunized activity. *Givhan, supra*, —— U.S. at ——, 99 S.Ct. 693. *See Mack v. Cape Elizabeth School Board*, 553 F.2d 720, 722 (1st Cir. 1977).

## DUE PROCESS

The trial court bifurcated plaintiffs' status, finding that they voluntarily resigned from their positions as *directors*, but not as *employees* of the Highway Authority. The court then focused on the rights plaintiffs had as *employees* of the Authority, as distinct from any rights they might have had as *directors*. This bifurcated approach afforded the court a quick, though incorrect, route around the due process issue. At conflict here are two sets of rules pertaining to the manner in which officers and employees of the Highway Authority may be discharged; the personnel rules of the Highway Authority, which were promulgated in 1965 when it was completely autonomous, and the bylaws, which were promulgated in 1973 when the Highway Authority was put under the wing of the Department of Transportation and Public Works. Plaintiffs successfully urged the court to consider articles XIV and XV of the personnel rules of the Highway Authority.[4] In essence, those provide that employees or officers of the Authority may be discharged only for cause, with written notice prior to the termination, and that an administrative proceeding must be held.

---

**4.** "Article XIV

    C. Destitutions:

      The employees or officers of the Authority may only be destituted because of a justified reason and previous presentation of charges.

. . . . .

    D. Dismissals:

      The Director may decree dismissals due to lack of funds or lack of work or when he finds the employee is physically or mentally handicapped to do his work. Another reason for dismissal may be the proven incompetency of an employee to carry out his duties.

. . . . .

Article XV—Appeals

    A. Any suspended, dismissed or separated employee due to physical handicap, as described in Enclosure 1, Section E of Art. XIV of this regulation, may appeal the decision of the Director before the Authority's Governing Board. Said appeal must be filed within 10 days after he receives the notification and the employee must present the evidence.

. . . . .

    B. No officers or employees of the Authority may be destituted, suspended or dismissed due to political, religious or racial motive, or social condition, or any other nature involving any kind of discrimination.

. . . . .

Defendants maintained that the terminations were proper under the bylaws of the Authority, promulgated in 1973.[5] Article 13 of the bylaws provides that all *officers* of the Authority can be removed by the executive director with the consent of the Secretary of Transportation and Public Works, so there is no need to show cause, present written charges, or hold an administrative proceeding.[6] In the case of *employees*, however, Article 13 provides that the personnel rules govern.

On remand, there must be further consideration as to which of the two rules was applicable, how the rules interface, and what the terms "officer" and "employee" mean. The court's approach allowed high ranking employees by shedding their directors' status to cloak themselves in the protection of the personnel rules, thus avoiding the risk of summary discharge to which the bylaws appear to expose them.[7] On remand, the court should first determine, or instruct the jury to determine, whether the plaintiffs were policy makers or regular employees. He then should instruct them that if they were employees, it must be determined whether in fact they intended to resign from their jobs (in which case they would have no right to a hearing) or whether they were misled by defendants into doing so (making a hearing necessary). If, on the other hand, the plaintiffs were policy makers, it would make no legal difference whether or not defendant Ignacio tricked them, because he could have fired them at will without a hearing anyway.

■ The district court's instructions to the jury concerning due process were incomplete. The court told the jury:

The constitution provides that nobody can be deprived of liberty nor [*sic*] property without due process of law. Now, the liberty that we are talking about is not just the right to be out of jail. No, it goes to the extent of including the right to be free to obtain an employment without the stigma of having been dismissed from a previous employment. Property is the right to have and keep something of value; for example to keep and own a house, an automobile, and this also is included, the right to keep a job, to keep an employment. Plaintiffs and all other persons living under the protection of the constitution have the legal right at all times not to be deprived without due process of law of liberty and property.

To be deprived of liberty or property without due process of law means to be deprived of liberty or property without authority of the law. Because a jury can determine whether or not Plaintiffs were deprived of any of their liberty or property without due process of law as alleged by them. The jury must first determine from the evidence in the case whether the Defendants, acting individually or in concert with each other, did any of the acts charged by the Plaintiffs.

And so whether under the circumstances shown by the evidence in the case the Defendants acted within or without the

---

**5.** "Article 13—APPOINTMENT AND REMOVAL OF OFFICERS AND EMPLOYEES

The Secretary of Transportation and Public Works shall appoint and remove the Executive Director and the Secretary. All other officers of the Authority shall be appointed and removed by the Executive Director with the consent and approval of the Secretary of Transportation and Public Works. The powers, duties, responsibilities and compensation of the officers of the Authority shall be determined by the Secretary of Transportation and Public Works.

The employees of the Authority shall be appointed and removed by the Executive Director in accordance with the regulations established pursuant to Section 7 of the Puerto Rico Highway Authority Act." 5 Common-

wealth of Puerto Rico Highway Authority Department of Transportation and Public Works Resolution 73–3, By-Laws of the Puerto Rico Highway Authority.

**6.** Should the district court determine that plaintiffs deserved the procedural protection of the personnel rules, inquiry should be made to determine whether plaintiffs exhausted their administrative remedy under Article XV.

**7.** Defendants argue that the district court should have abstained from entertaining this action so that the state courts could interpret the personnel rules and the bylaws. The district court did not address this issue in his opinion and, on remand, the court might wish to do so.

bounds of their lawful authority under state law. If Defendants acted within the limits of their lawful authority under state law then Defendants could not have deprived Plaintiffs of liberty or property without due process of law.

The court's opinion makes it clear that it fully understood that for plaintiffs to prevail on their due process claim for deprivation of their property interests, they needed to show they had "a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Willens v. University of Massachusetts*, 570 F.2d 403, 405 (1st Cir. 1978). In footnote 2 of its opinion, the court stated that plaintiffs' claim rested on a statute, the personnel rules. However, the importance of showing this entitlement was not explained to the jury, who could well have taken the court at its generous word that "Plaintiffs and all other persons living under the protection of the constitution have the legal right *at all times* not to be deprived without due process of law of liberty or property." (emphasis added). On retrial of this issue, if a jury is used, the court should instruct along the following lines: "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that secure certain benefits and that support claims of entitlement to these benefits." *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709.

## THE APPLICABILITY OF ELROD v. BURNS

■ The district court misstated the holding of *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), in its instructions. The pertinent portions of the instructions were:

So if you can find from the evidence in the case that Plaintiffs voluntarily resigned their employment or that they occupied positions of trust regarding policy making functions, *and* were not dismissed for political reasons then his actions were not beyond the bounds of his lawful authority under the state law.

But if you find that Plaintiffs were deceived, tricked into tendering their resignations and that they were regular or permanent employees who did not occupy positions of trust involving policy making functions, *or* that they were dismissed for political reasons, that is that the acts of the Defendants were prompted by motives other than the lawful performance of his official duty, then you may find that the Defendants acted unlawfully contrary to the laws of Puerto Rico and the constitution [*sic*] of the United States.

(emphasis added). These instructions were faulty for two reasons. First, the district court erroneously implied that an employee could not legally be terminated for political reasons, regardless of that employee's policy making functions. The court's use of the conjunctive "and" in the first quoted paragraph and its use of the disjunctive "or" in the second paragraph could have given the jury the mistaken impression that *any* politically motivated discharge is illegal. That is contrary to the holding in *Elrod, supra*, 427 U.S. at 372, 96 S.Ct. 2673. As we noted in *DiPiro v. Taft*, 584 F.2d 1, 3 (1st Cir. 1978), "It [*Elrod*] simply holds that the first amendment prohibits political considerations in the case of non-policy making employees, *but not in the case of policy making employees.*" (emphasis added). If the jury found that the plaintiffs occupied positions as policy makers, under *Elrod* it could find that the discharges were legal, even if the product of political motivation.

Second, the trial judge's explanation of what constitutes political reasons was impermissibly broad. He defined political reasons as "the acts of the Defendants . . prompted by motives other than the lawful performance of his official duty."

The trial court in its opinion attempted to distinguish the facts in *Elrod* from the facts in the instant case:

At this point, we must distinguish the facts in *Elrod, supra*, from those present in the instant case. The ruling in *Elrod* concerning patronage dismissals is cen-

tered on *policymaking positions.* However, plaintiffs' respective positions as directors of various offices within the Highway Authority are not at stake herein. Plaintiffs voluntarily resigned from such positions, and they may not seek to be reinstated to the same. It is the termination of their *status* as employees of the P.R. Highways Authority which is the proper object of challenge herein.

While we do not find that the district court committed clear error in cleaving the plaintiffs from their status as directors and thus avoiding the impact of *Elrod,* we think that on retrial this finding should be reexamined in the light of the Supreme Court's discussion in *Elrod* of the differences between policy making and nonpolicy making employees.

> No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

*Elrod v. Burns, supra,* 427 U.S. at 367–68, 96 S.Ct. at 2687.

In *Rivera Morales v. Benitez de Rexach, supra,* 541 F.2d at 884, we upheld the granting of a defendant's motion for summary judgment where the plaintiff, an assistant secretary of education, was discharged, allegedly without cause. In that case, the district court, following the dictates of *Elrod,* concluded that, since plaintiff made policy decisions of a "minor nature," he was a procedurally unprotected policy maker.

In the instant case, it is undisputed that each plaintiff was appointed by the executive director of the Highway Authority, earned in excess of $30,000 a year, had credit cards issued by the Authority to staff members and top officers of the corporations, and directly advised the executive director. The decisions made and advice given by each plaintiff relative to his position in the Authority appear, at the least, to be of a minor policymaking nature and in keeping with the duties and responsibilities of policy makers. *Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir.), *cert. denied,* 430 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977). *See Alfaro de Quevado v. De Jesus Schuck,* 556 F.2d 591, 592–93 (1st Cir. 1977), for discussion of what is meant by the term "policymaker." On remand, the parties should explore the exact parameters of plaintiffs' responsibilities in the Highway Authority, with the guidelines of these cases in mind.

■ There are two other matters that deserve comment. The district court erred both in its instructions on conspiracy and its finding of a conspiracy by failing to refer to any overt act or acts which were related to the formation or furtherance of the alleged conspiracy. *See Gual Morales v. Hernandez Vega,* 579 F.2d 677, 680 (1st Cir. 1978); *Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir. 1977).

Should the court on retrial decide that attorney's fees are proper, we caution it to formulate the award in accord with the requirements of *King v. Greenblatt,* 560 F.2d 1024, 1026–28 (1st Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), which was not done in this case.

*Remanded for further proceedings not inconsistent herewith.*