Andrew J. **MOYNIHAN;**
**Theresa Church**

v.

J. Michael **HICKEY; Joseph W. Hogan; H. Irene Peters; Samuel Reddy, Jr.; Leon Harold Rice; Barbara E. Arnold; Lionel R. Boucher; James D. Casey; Claire D. Clarke; Richard M. Flynn; David T. Rines; Stella D. Scamman.**

**No. C. 85–674–D.**

United States District Court,
D. New Hampshire.

Jan. 21, 1986.

---

Charles G. Douglas, III, Concord, N.H., for plaintiffs.

James A. Sweeney, Asst. Atty. Gen., Concord, N.H., for defendants.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

Prior to October 21, 1985, the plaintiffs, Andrew J. Moynihan and Theresa Church, were employed by the federally-funded state agency known as the New Hampshire Council on Vocational Technical Education ("Council"). As of said date, Moynihan had been so employed for sixteen (16) years and held the position of Executive Director. In turn, Church had been so employed for fourteen and one-half (14½) years and held the position of Executive Secretary. In the course of a Council meeting held on Octo-

ber 21, 1985, the plaintiffs were orally advised that Council had been reorganized, that their respective positions had been eliminated, and that they were to turn in their keys and to cease all further duties of employment for Council. Their inquiries as to benefits they perceived to be due and owing them were met with replies to the effect that such would be taken up in the future by the Executive Committee of Council. Plaintiffs' Exhibit 17.[1]

In this litigation, the issues currently before the Court for resolution, after hearing, concern the plaintiffs' claims of right to injunctive relief requiring their reinstatement.[2] Specifically, plaintiffs contend that the evidence demonstrates violations of their constitutional rights of free expression pursuant to the First and due process pursuant to the Fourteenth Amendments to the United States Constitution.[3]

## 1. The Facts

Commencing with passage of the Morrill Act in 1862 (12 Stat. 503), the federal government has recognized responsibility for assistance to vocational education. In 1963, Congress sought to modernize its approach by redirection and expansion of funding assistance for the purpose of making available to all citizens high quality vocational education. The 1963 legislation contained a provision for designation of an advisory council in each state, membership of which was to include persons familiar with the vocational needs of management and labor as well as representatives of educational institutions which provided programs of technical and vocational training.[4]

Significant amendments to the Vocational Education Act were made in 1976, at which time the statute was codified at 20 U.S.C. §§ 2301–2461. Therein as a condition of participation in the program the governor of each state was required to appoint a state advisory council, one or more individual members of which were to come from one or more of twenty specified categories of the citizenry. 20 U.S.C. § 2305(a). Following gubernatorial selection, each council was to select its chairman, 20 U.S.C. § 2305(c), and each council was authorized to employ "such professional, technical, and clerical personnel as may be necessary to enable it to carry out its functions under this chapter...." 20 U.S.C. § 2305(e).[5] Additionally, the assurance of fiscal autonomy as to each council was set forth in a statutory provision which stated:

The expenditure of these funds is to be determined solely by the State advisory council for carrying out its functions under this chapter, and may not be diverted or reprogramed for any other purpose by any State board, agency or individual. Each counsel *shall designate an appro-*

---

**1.** Plaintiffs' Exhibit 17 is by agreement a transcript of the relevant portions of the tape recording of the Council meeting of October 21, 1985.

**2.** The multi-count complaint also seeks future jury resolution of certain damage claims, and these counts (as are the current issues) are the subject of a motion to dismiss filed on behalf of defendants. The Court defers to the future any ruling on the additional counts of the complaint.

**3.** As to these federal constitutional claims, jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3), the claim being advanced that the actions of the defendants are violative of the plaintiffs' civil rights under 42 U.S.C. § 1983, a statute which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Co-lumbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ....

**4.** The legislative background of the 1963 legislation is to be found in the legislative history set forth in 1963 U.S.Code Cong. & Ad.News 1293, *et seq.*

**5.** 20 U.S.C. § 2305(e) also empowered the state council to contract for services necessary to carry out its evaluation functions. However, as to both staffing and independent contractors, the statute made clear that their work for the council was to be "independent of programmatic and administrative control by other state boards, agencies, and individuals". *Id.*

*priate State agency or other public agency,* eligible to receive funds under this chapter, to act as its fiscal agent for purposes of disbursement, accounting and auditing.

20 U.S.C. § 2305(f)(2) (emphasis added).

Employed as staff by Council, the plaintiffs were originally in the state employee system, and the New Hampshire Department of Education was the originally designated fiscal agent for Council. In 1981, however, the then membership of Council voted to change fiscal agents to the Concord, New Hampshire, School District, and plaintiffs accordingly withdrew from the state employment system.[6] For some period of time prior to 1982, plaintiffs operated as employees-at-will of Council, but in that year, Council caused job descriptions to be drawn up for each of them and set up a schedule of benefits by means of Amendments or Additions to its Administrative Guide.[7] In addition to detailing such items as wage and personnel policies, mileage and meal reimbursements, holidays, annual and sick leave, and annual staff evaluations, these additions specified a dismissal procedure for staff of Council as follows:

3.6 *Dismissal Procedure*

Dismissal procedure shall be by due process as follows:

(1) Notification to employee in writing, 30 days prior to dismissal date, setting forth the grounds for dismissal.

(2) If the employee desires a hearing, the employee shall make request within 10 days after receipt of dismissal notice in writing to the chairman of the Council.

(3) The employee shall have the right to a hearing before the Executive Committee within 15 days and may present witnesses and written evidence.

(4) The Executive Committee shall affirm, modify, or reverse the nonrenewal or dismissal in writing within five days.

Plaintiffs' Exhibit 7.

Commencing January 24, 1983, a series of term letter contracts were issued by Council to plaintiff Moynihan, who in turn issued identical letter contracts to plaintiff Church.[8] Each of said letter contracts incorporated by reference the provisions of the Additions set forth in Plaintiffs' Exhibit 7.[9]

In October 1984 Congress made extensive repealing amendments to the vocational education act by medium of passage of the Carl D. Perkins Vocational Act, so-called, P.L. 98–524, 98 Stat. 2435. Now codified at 20 U.S.C. §§ 2301–2471, the Per-

---

6. The change in fiscal agents apparently came about as the result of a Management Evaluation Review of Council performed by the United States Department of Education. As a result thereof, the United States Department of Education questioned the fiscal autonomy of Council, and in the summer of 1981 Council accordingly voted to change fiscal agents from the New Hampshire Board of Education to the Concord, New Hampshire, School District, effective October 1, 1981.

Plaintiffs' Exhibit 2 is a collection of correspondence detailing the apparent reason for such changes. Plaintiffs' Exhibit 3 is the agreement between Council and the Concord School District. Defendants' Exhibit K comprises the payroll manifests showing the withdrawal of plaintiffs from the state employment system in October 1981.

7. The original Administrative Guide, effective September 12, 1981, is Plaintiffs' Exhibit 4. Plaintiffs' Exhibit 5 is the October 21, 1981, job description for the Executive Secretary, while Plaintiffs' Exhibit 6 is the similar job description for the Executive Director of Council. Plain-

tiffs' Exhibit 7 details the Additions to Administrative Guide which were approved by Council under date of November 9, 1982.

8. The first such contract issued to plaintiff Moynihan was dated January 24, 1983, and covered the period January 1 through June 30, 1983. Defendants' Exhibit F. Subsequently, Council issued a contract dated July 26, 1983, to cover the period July 1, 1983, to June 30, 1984, Defendants' Exhibit E, which was followed in turn by a contract dated October 29, 1984, to cover the period July 1, 1984, through June 30, 1985. Defendants' Exhibit D. Moynihan in turn issued letter contracts to Church under dates of January 24, 1983, Defendants' Exhibit I; July 26, 1983, Defendants' Exhibit H; and October 29, 1984, Defendants' Exhibit G.

9. In each of said letter contracts, the wording was identical, and it provided—

Other terms of your appointment are as set forth in the Addition to the Administrative Guide approved by the Council at their meeting on November 9, 1982.

kins Act required a reduction in the number of members of Council to thirteen, each of which was to be representative of a defined segment of the population. 20 U.S.C. § 2322(a). The Perkins Act also mandated that

> [e]ach State council shall meet as soon as practical after certification has been accepted by the Secretary and shall select from among its membership *a chairperson who shall be representative of the private sector.*
>
> . . . .

20 U.S.C. § 2322(c) (emphasis added).

The Perkins Act made no changes in the provisions of the prior act concerning the staffing or the description of fiscal agents.[10]

On December 13, 1984, LeRoy A. Cornelson, Director of the Division of Vocational Education of the United States Department of Education, sent a memo to all appointing authorities, including the Office of the Governor of New Hampshire. Therein he set forth the Perkins Act requirement of membership on the Council and the time limitations for certification of the membership of the Council, and requested expedition of such appointments. A copy of relevant portions of the Perkins Act was appended to this memorandum. Plaintiffs' Exhibit 30.[11]

Commencing in January 1985, plaintiff Moynihan sought to ascertain from the Office of the Governor the membership of the new Council who were to be appointed pursuant to the Perkins Act. Plaintiffs' Exhibit 31.[12] On August 16, the Governor's Office certified that the Council had been appointed as required by the Perkins Act.

Plaintiffs' Exhibit 30. On September 5, 1985, the Governor forwarded a letter to J. Michael Hickey, then employed by the State of New Hampshire as Director of Economic Development, Department of Resources and Economic Development ("DRED"), wherein the Governor purported to appoint Hickey as the new Chairman of Council. Plaintiffs' Exhibit 11.

On September 24, 1985, Hickey, as Acting Chairman, held a meeting of the newly-appointed Council and appointed a number of committees, including a nominating committee. In the course of such meeting, immediate past Chairman Rice questioned the eligibility of Hickey, a State employee, to serve as Chairman, as he was not a representative of the private sector, but Hickey indicated that he had conferred with the Attorney General of New Hampshire and that his service as Council Chairman would be approved. Plaintiffs' Exhibit 13.[13]

A subsequent Council meeting was held on October 2, 1985, at which time the nominating committee reported the name of Hickey for Chairman. At this meeting, Joseph Hogan, a Council member, questioned the eligibility of Hickey to serve as a representative of the private sector and refused to vote for him for the position of Chairman. Moynihan raised similar questions in the course of said meeting. Plaintiffs' Exhibit 14.[14]

On October 3, 1985, Moynihan sent Cornelson a detailed letter in which he questioned the eligibility of Hickey to serve as Chairman in light of the fact that Moynihan did not believe that Hickey, as a State employee, could represent the private sec-

---

**10.** The counterpart of the Perkins Act with relation to Council staffing, which was originally to be found at 20 U.S.C. § 2305(e), is now to be found at 20 U.S.C. § 2322(e). The designation of fiscal agents found in the earlier statute at 20 U.S.C. § 2305(f)(2) is now to be found at 20 U.S.C. § 2322(f)(2).

**11.** Plaintiffs' Exhibit 30 includes excerpts from the file of the Governor of New Hampshire produced on discovery motion of the plaintiffs. Included therein are the Cornelson references referred to in the text of the Opinion.

**12.** Plaintiffs' Exhibit 31 is a chronology of the attempts made by Moynihan between January 14 and September 10, 1985, to ascertain the composition of the membership of Council.

**13.** Plaintiffs' Exhibit 13 is a copy of the minutes of the Council meeting of September 24, 1985.

**14.** Plaintiffs' Exhibit 14 is a copy of the minutes of the meeting of October 2, 1985.

tor. Plaintiffs' Exhibit 12.[15] At about the same time as Moynihan dispatched his letter to Cornelson, Church raised similar inquiries in a telephone call to a member of the staff of the Department of Education in Washington.

At the meeting of October 21, 1985, Council went into executive session, from which both plaintiffs were excused. On their return therefrom, Council advised plaintiffs as to the elimination of their jobs and further told them that the question of any benefits due and owing them would be taken up in the future by the executive committee of Council.

Plaintiffs here contend that the cause of their discharge was their complaints at Council meetings and to federal authorities with respect to what they perceived to be the improper composition of the membership of Council. Plaintiffs also claim that the due process rights provided in the Additions to Administrative Guide, Plaintiffs' Exhibit 7, were not complied with as regards the termination of their employment. The Court discusses these items *seriatim*.

### 2. The Free Expression Claims

Clearly, the continuation of public employment may not be conditioned "on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Proof of their claim that their employment was terminated for such an impermissible reason imposes initially a dual burden on these plaintiffs.

First, the plaintiffs must show that their complaints as to the composition of counsel membership, including selection of its chairperson, were protected by the First Amendment pursuant to the standards detailed in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Brasslett v. Cota*, 761 F.2d 827, 839 (1st Cir.1985); *Rosaly v. Ignacio*, 593 F.2d 145, 149 (1st Cir.1979). Second, plain-

tiffs must show that such protected speech was a "substantial" or "motivating" factor in the decision to discharge them. *Id.*

If plaintiffs successfully carry this dual burden, it then becomes incumbent on the defendant to demonstrate, by a preponderance of the evidence, that defendants would have taken the identical personnel action in the absence of the protected conduct. *Brasslett v. Cota, supra*, 761 F.2d at 839, *citing Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Rosaly v. Ignacio, supra*, 593 F.2d at 149, *citing Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1970).

The *Pickering* standards require the Court to balance the interests of the plaintiffs, as citizens, in commenting on matters of public concern against the defendants' interests, as employers, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education, supra*, 391 U.S. at 568, 88 S.Ct. at 1734; *Brasslett v. Cota, supra*, 761 F.2d at 839. Relevant to this balancing procedure are both the character and effect of the plaintiffs' speech, for as employers the defendants have greater interest in curtailing erroneous statements than correct ones, and a still greater interest in curtailing deliberate falsehoods. *Brasslett v. Cota, supra*, at 839. Defendants also have a more legitimate concern for expression which actually impairs their functions than for that which does not. *Id.* Correspondingly, the plaintiffs' interest as employees in making public statements is heightened according to their veracity and innocuity. *Id.*

■ Application of these factors to the evidence before the Court in the instant case requires a ruling that plaintiffs' complaints with respect to the composition of membership of Council fall clearly within

---

**15.** Plaintiffs' Exhibit 12 is the letter of October 3, 1985, and therein Moynihan raises other questions that he has with respect to the composition of other members of Council and what he

perceives to be its lack of proper representation of those elements of the citizenry interested in vocational education.

472

the protection of the *Pickering* standards. Not only does the applicable statute mandate that the membership of Council (and not the Governor) select its chairperson, but it also requires that such chairperson be serving on Council as a representative of the private sector. The attempt here to select by appointment a full-time State employee to serve as chairperson flies in the face of this congressional mandate. It would be difficult to find a clearer example of a matter of public concern upon which the plaintiffs are entitled to express their respective opinions.

█ However, the preponderance of the evidence does not support the claim of the plaintiffs that their complaints to Council and federal officials about the composition of the membership of Council and the selection of its chairperson were a "substantial" or "motivating" factor in their discharge. Indeed, the evidence before the Court shows that as early as July 1984 the Office of the Governor of New Hampshire had in mind the replacement of a majority of Council membership. Plaintiffs' Exhibit 30. As of the same date, the Office of the Governor was made aware of the displeasure of the State Department of Education with the change in fiscal agents. *Id.*[16]

Additionally, as of March 26, 1985, the Office of the Governor of New Hampshire had reached a decision that Council staff would be replaced with part-time employees and that it would be recommended that the fiscal agent be changed back from the Concord School District to some State agency. Plaintiffs' Exhibit 30.[17] And David Rines, Chairman of the Personnel Committee who recommended the termination of plaintiffs' employment, testified that his major reason for change was the fact that the staff salaries and benefits took up too great a portion of the Council budget.[18] Furthermore, while this litigation was in progress, the Governor of New Hampshire publicly stated that plaintiffs were being removed from their employment because they had caused the change in fiscal agents from the New Hampshire Department of Education to the Concord School District.[19]

Moreover, the first notification to the Office of the Governor from the United States Department of Education which questioned the selection of a chairperson for Council came by letter of November 5, 1985, from Dr. Wu. Plaintiffs' Exhibit 21. This letter was answered on November 12, 1985, Defendants' Exhibit L2, and in turn such response was acknowledged by a letter from Dr. Wu under date of December 16, 1985. Plaintiffs' Exhibit 30. All such communications, of course, were well after the date, October 21, 1985, of the termination of the employment of these plaintiffs. Hickey himself had been to Washington prior to the October 2, 1985, meeting of Council, and while there had discussed future plans of Council with federal officials associated with the program. Defendants' Exhibit B.

---

**16.** The references to the incidents occurring on July 19, 1984, are taken from a memo of Nancy Baybutt to Ed Lecius (the Governor's Assistant) of the same date. Said memo is a part of the documents contained in Plaintiffs' Exhibit 30.

**17.** *See* Memo of March 26, 1985, from Ed Lecius to Bert Wakeley (another member of the gubernatorial staff), which is another document contained in Plaintiffs' Exhibit 30.

**18.** Rines, who is the Deputy Director of Personnel for the State of New Hampshire, also testified that he felt the salaries paid to plaintiffs were high when compared with similar positions in State employment. However, he made no attempt to compare the salaries of plaintiffs with the salaries of staff employed by advisory councils in other states, nor did he at any time consider making an offer to plaintiffs to contin-

ue in their employment at a lower range of State salaried positions.

**19.** At a hearing on a motion to quash a subpoena issued to the Governor of New Hampshire, the Attorney General of New Hampshire stipulated that the statements of said Governor as set forth in Plaintiffs' Exhibit 19 (a clipping from the *Manchester Union Leader* of November 22, 1985) was a correct statement of what the Governor had said to the reporter who interviewed him with regard to plaintiffs' litigation. Totally apart from the fact that it was the then membership of Council, rather than plaintiffs, who possessed the power to select the fiscal agent, it is worthy of note that the statute expressly provides such option to the membership of Council.

In short, whether budgetary considerations, a belief that plaintiffs somehow had the power to cause the change of fiscal agents, or a desire to find a position of employment for a loyal political supporter,[20] were causal of the discharge of plaintiffs, the Court is satisfied that they were not discharged for their exercise of their rights to complain about the composition of the membership of Council and the selection of its new chairperson. This being so, the Court does not have to consider whether the defendants have marshalled sufficient evidence to sustain their burden pursuant to the requirements of *Mt. Healthy City School District v. Doyle, supra.*[21]

*3. The "Due Process" Claims*

As previously outlined, the terms and conditions of plaintiffs' employment were set forth in certain letter contracts. Defendants' Exhibits D and G. As of October 21, 1985, the calendar expiration date of these contracts, June 30, 1985, had passed. *Id.* Defendants argue that, as the calendar period of the contract had thus expired, the due process provisions incorporated therein by reference, p. 6, *supra*, were a nullity with reference to the steps taken to discharge plaintiffs. This argument is without legal merit.

The due process clause of the Fourteenth Amendment protects against deprivations of property without constitutionally adequate procedures. The category of protected property includes government benefits such as public employment. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972).

To claim such a property interest, however, a person clearly "must have more than a unilateral expectation of it. He must ... have a legitimate claim of entitlement to it." *Castro v. United States,* 775 F.2d 399, 405 (1st Cir.1985), *quoting Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. Additionally, protected property interests are not created by the Constitution, but rather by "existing rules or understandings that stem from an independent source such as state law...." *Cleveland Board of Education v. Loudermill,* — U.S. —, —, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), *quoting Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. *See also Brown v. Bedford School Board,* 122 N.H. 627, 630, 448 A.2d 1375, 1376 (1982); *Daley v. Town of New Durham,* 733 F.2d 4, 7 (1st Cir.1984). (The law of New Hampshire is similar in that it recognizes no protected property interest in a person's abstract need or desire for a benefit.)

A property right in a government benefit can arise out of an informal or implicit rule of understanding. *Bishop v. Wood, supra,* 426 U.S. at 344, 96 S.Ct. at 2077; *Perry v. Sindermann,* 408 U.S. at 601–02, 92 S.Ct. at 2699–2700. But there can be no property right unless the government entity in question has adopted the asserted rule or entered into the asserted understanding. *Sabet v. Eastern Virginia Medical Authority,* 775 F.2d 1266, 1269 (4th Cir.1985).

The precise issue presented, therefore, is whether, having accepted the labors of plaintiffs for the period between June 30, 1985, and October 21, 1985, at the same rate of pay provided in their expired contracts, the defendants can now be heard to say that the due process conditions set forth in said contracts were not applicable to these plaintiffs.

It is black-letter law, 53 Am Jur.2d, *Master and Servant* § 23, pp. 99–100, that where, as here, an employee's services are

**20.** The evidence is that one Ralph Brickett was selected to serve as the *per diem* consultant to Council after the discharge of plaintiffs. His agreement to so serve is outlined in the March 26, 1985, memo from Lecius to Wakeley, which is part of Plaintiffs' Exhibit 30.

**21.** Under *Mt. Healthy,* the legal test "is not whether a sufficient reason existed [for discharge of plaintiffs] but whether, in fact, it was the reason truly espoused." *Arnaldo Jimenez-Fuentes, et al v. Gaztambide, et al,* 779 F.2d 765, 768, (1st Cir.1985).

continued after expiration of a contract, it is presumed that the employee's continued service is under a new contract which contains the same terms and conditions as did the original. *Vogel v. Washington Metropolitan Area Transit Authority,* 533 F.2d 13, 15 (D.C.Cir.1976); *Smith v. Shallcross,* 165 Pa.Super. 472, 69 A.2d 156 (1949); *Art Wire & Stamping Co. v. Johnson,* 141 N.J.Eq. 101, 56 A.2d 11 (1947), *aff'd* 142 N.J.Eq. 723, 61 A.2d 240 (1948). This rule has long been followed in New Hampshire. *Park Square Automobile Station v. American Locomotive Co.,* 79 N.H. 497, 499, 111 A. 689 (1920); *Rindge v. Lamb,* 58 N.H. 278, 279 (1878); *New Hampshire Iron Factory Co. v. Richardson,* 5 N.H. 294, 295 (1830).

Accordingly, having furnished their services from the time of expiration of their former contracts until October 21, 1985, at the same pay rates provided in said expired contracts, the plaintiffs were entitled to presume that any changes in the terms and conditions of their employment would be in accordance with the due process provisions set forth in said contracts. Otherwise stated, they were possessed of "substantive rights created by legitimate, objective expectations derived from state law [which expectations] are entitled to the procedural protections of the due process clause of the Fourteenth Amendment." *Rogers v. Okin,* 738 F.2d 1, 6 (1st Cir.1984).[22]

### 4. Conclusion

Relief by way of preliminary injunction requires the establishment of criteria holding that (1) plaintiffs will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting injunctive relief would inflict on defendants; (3) plaintiffs have exhibited a likelihood of success on the merits; and (4) the public interest will not be adversely affected by the granting of the injunction.

**22.** The Court concurs with the argument of defendants that only property interests, and not liberty interests, are here implicated. *See Castro v. United States, supra,* 775 F.2d at 407.

**23.** The transcript of the meeting at which plaintiffs were discharged contains encomiums by

*Castro v. United States, supra,* 775 F.2d at 407, *citing Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981).

■ The deprivation of the plaintiffs' constitutional right of due process requires no further demonstration of irreparable injury. 11 Wright & Miller, *Federal Practice and Procedure* § 2948, p. 440. *See also Keefe v. Geanakos,* 418 F.2d 359, 363 (1st Cir.1969) (wrongfully discharged teacher suffers irreparable injury, even though he may later recover money damages when deprivation of his constitutional right to academic freedom is the focus of the litigation). Moreover, plaintiffs were ostensibly discharged as part of a "reorganization" of Council when the evidence before the Court demonstrates that as of the date of their discharge the only "reorganization" which had taken place was the striking from the administrative rules any due process requirements with reference to their discharge. Such haste to undo the work performed for many years by loyal employees who were fully competent in the field of vocational education [23] is, I find and rule, demonstrative that injury sustained by the plaintiffs outweighs any harm which granting the injunction would inflict on these defendants. There is clearly here a likelihood of success on the merits, and certainly the public interest will not be adversely affected by the granting of injunctive relief. At the very least, the citizens of New Hampshire are entitled to have Council's affairs, including the composition of its membership, conducted in accordance with the mandate of the federal officials whom those citizens saw fit to elect to the United States Congress.

In sum, the Court finds and rules that the plaintiffs herein are entitled to relief by way of preliminary injunction reinstating them to the positions which they held as of

members of Council with respect to plaintiffs' past work for Council. Additionally, during the approximately three years that plaintiffs had been evaluated annually by their employers, no negative evaluation had been rendered.

October 21, 1985, and that they are further entitled to full payment of all benefits accruing to them under the terms and conditions of the contracts which governed their services for the period between June 30, 1984, and July 1, 1985. Additionally, if these defendants [24] desire to discharge the plaintiffs from further employment with Council, they are enjoined to follow the due process provisions of paragraph 3.6 of the Additions to Administrative Guide, Plaintiffs' Exhibit 7, which terms and conditions were expressly incorporated by reference into said employment contracts.

A separate Order of Preliminary Injunction is issued herewith this date, conditioned on the filing by these plaintiffs of a bond in the total amount of $10,000 for the payment of any damages which might be sustained by the defendants herein. Rule 65(c), Fed.R.Civ.P.

The foregoing shall comprise the findings and rulings of the Court pursuant to the requirements of Rule 52(a), Fed.R. Civ.P. Any requests for findings of fact and rulings of law which are not inferentially herein granted are herewith denied.

SO ORDERED.

## ORDER OF PRELIMINARY INJUNCTION

This action having come on for hearing for preliminary injunction before the Court, and the issues having been duly heard in accordance with the Memorandum Opinion herewith filed as of this date, it is ORDERED and ADJUDGED:

A. The defendants, J. Michael Hickey, Joseph W. Hogan, H. Irene Peters, Samuel Reddy, Jr., Leon Harold Rice, Barbara E. Arnold, Lionel R. Boucher, James D. Casey, Claire D. Clarke, Richard M. Flynn, David T. Rines, and Stella D. Scamman, and their successors in interest, and any officers, agents, employees, servants, or attorneys employed by the New Hampshire Council on Vocational Technical Education ("Council") are hereby preliminarily enjoined from:

1. Further continuing in force and effect the purported discharge of the plaintiffs Andrew J. Moynihan and Theresa Church which took place on October 21, 1985, and ordered and required immediately to reinstate said plaintiffs to said positions of employment as were held by them prior to the said purported discharge;

2. Withholding from the said plaintiffs Andrew J. Moynihan and Theresa Church any payments of salary or benefits due and owing them under the terms and conditions of the latest contract of employment accorded them by Council for the period of June 30, 1984, to July 1, 1985;

3. Seeking to discharge the said plaintiffs Andrew J. Moynihan and Theresa Church from their positions of employment with Council without first invoking the due process provisions set forth in paragraph 3.6 of the Additions to Administrative Guide, which is Plaintiffs' Exhibit 7 in this litigation. This Order of Injunction extends to all persons associated with or previously associated with Council who have any input into the terms and conditions of the plaintiffs' employment and the benefits accuring therefrom;

B. This Order of Injunction shall become effective upon the giving of security by the plaintiffs in the total amount of ten thousand dollars ($10,000) for the payment of such costs and damages as may be incurred or suffered by the defendants, said security to be furnished pursuant to the applicable provisions of Rule 65(c), Fed.R.Civ.P.

SO ORDERED.

---

**24.** In arriving at the resolution of the issues here presented, the Court has granted the motion of plaintiffs, filed on December 19, 1985, which seeks to amend the complaint to designate the defendants in their official capacities for the purposes of injunctive relief. The Court finds that such amendment is necessary to cause the pleadings to conform with the evidence and is here granted freely to subserve the presentation of the merits of this action, the Court being satisfied that the amendment in no way prejudices the defendants in the presentation of the merits of their claims herein. Rule 15(b), Fed.R.Civ.P.