Jose A. ORTIZ, Plaintiff,

v.

Hon. Jaime TORRES GAZTAMBIDE, as former Secretary of Housing of the Commonwealth of Puerto Rico and in his personal capacity; his wife Carmen Gladys Vincenty and their Conjugal Partnership; Ariel Nazario as Secretary of Housing of the Commonwealth of Puerto Rico and in his personal capacity; his wife Mrs. Nazario, and their Conjugal Partnership; Jose A. Rivera, as President of the Housing Bank and Finance Agency of Puerto Rico, and in his personal capacity; his wife Mrs. Rivera and their Conjugal Partnership, Defendants.

Civ. No. 86–0851(JP).

United States District Court,
D. Puerto Rico.

Nov. 4, 1987.

646

--------

Frank Rodríguez García, Ponce, P.R., for plaintiff.

Francisca Santiago Negrón, and John Nevárez, Dept. of Justice, Federal Litigation Div., San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action for injunctive relief and damages brought under the Civil Rights Act, 42 U.S.C. section 1983, the first and fourteenth amendments of the United States Constitution and certain pendent claims where plaintiff alleges he was dismissed by the defendant, José A. Rivera, President of the Housing Bank and Finance Agency of Puerto Rico (the Bank), solely for Ortíz political affiliation with the New Progressive Party (NPP). This Court has subject matter jurisdiction over this case by virtue of 28 U.S.C. sections 1331 and 1343(a)(3). The claims against all defendants, except José A. Rivera, were dismissed by Order of this Court at the Initial Scheduling Conference Order entered April 13, 1987.

Following a bench trial held June 30 and July 1–2, 1987, and after careful review of the testimony of the witnesses at trial, the exhibits presented by the parties, the agreed stipulations, and due deliberation, the Court enters the following Findings of Fact and Conclusions of Law. Fed.R.Civ. P. 52(a).

## I. FINDINGS OF FACT

1. In 1976, the NPP won the general elections in Puerto Rico. The NPP administration took control of the government of the Commonwealth of Puerto Rico in early 1977. José A. Ortíz was a candidate on the NPP slate in the 1976, but lost his mayoral bid in Naranjito in those elections. Ortíz was later selected as NPP President for Naranjito and won an assemblyman's position in the municipal government.

2. The Department of Housing was created by law, 3 L.P.R.A. section 441 *et seq.* The Housing Bank and Finance Agency of Puerto Rico is a corporation created as an instrumentality of the Government of Puerto Rico pursuant to Act 146 of June 30, 1961, 7 L.P.R.A. section 901, *et seq.* The Bank, the Rural Housing Administration, and the Housing and Renewal Corporation (CRUV) are dependencies of the Department of Housing.

3. The Bank is an independent administrator in personnel matters and has maintained its own Rules and Regulations for managerial employees since 1977. The Rules and Regulations follow the civil service classifications of the Personnel Law of Puerto Rico. Law No. 5 of 1975, *codified at* 3 L.P.R.A. § 1301, *et seq.* The Rules and Regulations have not always been strictly adhered to, especially in the areas of public posting of vacancies and open competition between candidates for positions. In this particular case, the position Ortíz was awarded was not posted. Neither plaintiff nor defendant presented any evidence that any candidate besides Ortíz was considered for the position of Security Officer. The Rules and Regulations have established the criteria for trust employees and enumerates eighteen positions in this category. The position of Security Officer is not a trust position under the Rules and Regulations of the Bank.

4. Ortíz applied for the position of Security Officer of the Housing Bank on April 12, 1977. Ortíz was appointed to the post the same day, with a salary of $800.00 a month. Despite the fact that the position of Security Officer did not appear on the bank's list of trust employees, Ortíz was so classified.

5. Ortíz' application for employment listed as qualifying experience his work in an automobile body repair and painting shop, a sales position in the automobile parts business, and employment in an automobile service station. The application for employment lists no experience as a guard or other type of security officer. The application also does not describe any experience in unionized labor-management relations. Finally, Ortíz did not list any work in banks on the application form.

6. Plaintiff's duties were carried out in a satisfactory manner in different areas of the Department of Housing. He worked under José Luis Romero, Security Director of CRUV. Ortíz was paid through the CRUV budget. He performed other tasks for the three entities under the general umbrella of Department of Housing; the Secretary of the Department, the Housing Administration, and the Housing Bank. He rendered a minimal part of his work for the Bank by visiting houses from which owners had been evicted after foreclosure. On occasion, Ortíz also maintained a presence in the Bank's lobby. His monthly salary at the date of dismissal was $1,370.00.

7. Ortíz did not render personal services to the President of the Bank, participate in the formulation of public policy, or perform tasks traditionally associated with a trust position.

8. Plaintiff proffered the following reason for his designation as a trust employee. As a security officer, Ortíz would be responsible for enforcement of security measures against other employees of the Bank. Ortíz was designated a trust employee, then, to avoid any conflict of interest or labor relations difficulties that may arise.

The Court reads the testimony of Ortíz and his corroborative witness to be a veiled allusion to the "mixed guard" bargaining unit prohibited by section 9(b)(3) of the Taft-Hartley Act. 29 U.S.C. § 159(b)(3).

9. After two terms in office, the NPP administration was turned out of the halls of government in the 1984 general elections. The other large political party in Puerto Rico, the Popular Democratic Party (PDP), assumed control of the executive and legislative branches of the government of the Commonwealth of Puerto Rico in January 1985. After the change in administrations, defendant José A. Rivera was named head of the Bank.

10. On May 31, 1985, Rivera sent a letter to Ortíz dismissing Ortíz. That letter gave a reason for Ortíz dismissal. Despite Ortíz' classification as a trust employee, the letter stated, the duties assigned the work as Security Officer were those of a career employee. For such a career position, the letter went on to say, Ortíz had not competed. For this violation of the merit principle,[1] i.e., that Ortíz held a position that he had no right to acquire in the manner he did, Ortíz lost his job on June 3, 1985.

11. No one has replaced Ortíz in his position.

## II. CONCLUSIONS OF LAW

### A. *First Amendment Claim*

 The Constitution of the United States in its first amendment guarantees the right of free association to all its citizens. Political belief and association constitute the core of those activities protected by the first amendment. *Elrod v. Burns,* 427 U.S. 347, 356, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976). Plaintiff alleges a violation of his first amendment right based on his dismissal solely because of political affiliation. Because of Ortíz' work with the NPP, it is alleged, Rivera, part of the incoming PDP administration, ousted Ortíz.

Ortíz had the burden of proving that the defendant's intent to discriminate or violate his constitutional rights was a "substantial" or "motivating factor" in the employment decision. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Kercado-Meléndez v. Aponte-Roque,* 829 F.2d 255, 263 (1st Cir.1987); *Rosaly v. Ignacio,* 593 F.2d 145, 149 (1st Cir.1979). Ortíz has gone far to make out such a case. The removal of a party official, Ortíz, from a government job by a recent political appointee, Rivera, after an election when that party official has held the position for a substantial period of time certainly reeks of a patronage firing. Nevertheless, what we are actually confronted with in this case is an all-too familiar figure in Puerto Rico; not the political animal, but the political vegetable.

Ortíz, because of his political services, was given a job. Because the personnel regulations concerning career positions were too cumbersome for immediate results, and open competition could not guarantee Ortíz a job, the President of the Bank at the time of plaintiff's appointment, in 1977, invented a "trust position." This patronage position was concocted to accomodate what is known in Puerto Rico as a "batata política", a political sweet potato. In Puerto Rican parlance a batata política is one who is employed because of his political services and not because of his qualifications. Ortíz fit the usual profile for this status. Ortíz ran for mayor of the town of Naranjito in 1976, but lost. Thereafter he was appointed President of the NPP in that town and elected assemblyman in the Municipal Government. For his good and faithful service to the party, he was rewarded by employment in a job that was an illegal creation. Ortíz was subsidized at taxpayer expense in this position.

 Aside from his record of service for the NPP coupled with the date of his

---

**1.** The merit principle, that hiring, promotion, training, and retention of civil servants will be guided solely by merit, is ordained in the public policy declaration of the civil service law of Puerto Rico; Law 5 of 1975, *codified at* 3 L.P.R.

A. § 1311. Although statutorily exempted from the civil service law, the Housing Bank has adopted parallel regulations governing personnel practices. These regulations mirror the merit principle.

dismissal, Ortíz presented no other evidence of political animus against him. No conversations between Ortíz and Rivera were adduced at trial. The dismissal letter on its face was apolitical. Nevertheless, assuming that Ortíz has made out a prima facie case of political discrimination, the burden shifts to Rivera to show by a preponderance of the evidence that the decision to discharge would not have been made "but for" Ortíz' political affiliation. *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Kercado-Meléndez,* 829 F.2d at 263; *Rosaly,* 593 F.2d at 149. Dismissal because plaintiff is a member of the opposing political party, however, is not the same as dismissal from the chimerical job to which Ortíz was appointed because of his political affiliation. In other words, while it is clear that Ortíz was politically hired, that does not automatically make his firing political.

■ Upon the change of administration, the new head of the Bank, defendant Rivera, was apparently unwilling to continue wasting the Bank's resources on this contrived Security Officer's post. The post of Security Officer should have been classified as a career position, and Ortíz had been appointed in contravention of the Bank's regulations by not competing for the job. Ortíz' dismissal was fully justified on that ground in the dismissal letter. Alternatively, the trust position of Security Officer through which Ortíz had been paid during the preceeding NPP administration did not exist and Ortíz' dismissal could also be justified on that ground. In any event, the Bank need not be saddled with this patronage appendage. Defendant has strongly carried his burden in this regard. Although Ortíz' hiring and firing clearly took place in a political context, political animus by Rivera against Ortíz was not the reason for the firing. Rivera was eliminating a post that could be used for illicit political purposes; he was not firing Ortíz because Ortíz was an NPP. No showing was made by Ortíz that he was replaced by anyone, much less by a PDP batata política. The number of agencies for which Ortíz claims to have performed tasks indicates that no single one of them had enough work to justify the hiring of this additional Security Officer. Not only was Ortíz hired to a non-existent post, but Ortíz testified that he was hired to fill a job, that of labor relations consultant, that was unqualified for given his background outlined in findings of fact ¶ 5. Ortíz was shuffled about, picking up odd assignments among several agencies in a vain attempt to justify his salary. As such, Ortíz has not presented any evidence that the reason given for his dismissal was mere pretext.

The Court concludes that the decision to dismiss Ortíz would have been made irrespective of Ortíz membership in the NPP. *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Kercado-Meléndez,* 829 F.2d at 263; *Rosaly,* 593 F.2d at 149. The first amendment claim is therefore DISMISSED.

### B. *Fourteenth Amendment Claim*

■ Ortíz claims to have suffered a violation of his right to procedural due process in that he was not afforded a pretermination hearing. Ortíz' due process claim depends on him having a property interest in his continued employment. *Brock v. Roadway Express,* 481 U.S. ——, —— ——, 107 S.Ct. 1740, 1746–47, 95 L.Ed.2d 239, 249–50 (1987); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed. 2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Kercado-Meléndez,* 829 F.2d at 262. Property interests are not created by the Constitution but are rather rooted in an independent source, such as state law. *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491; *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

In this case, even the plaintiff seemed confused over what the status of Ortíz' job was. On paper, it was a trust position. The duties, however, corresponded to that of a career position, *i.e.,* a security guard. The confusion is the result of the fact that Ortíz' job existed only because of the contrivance of politicians bestowing gratuities with taxpayers' monies. These gift-givers could not accomplish their ends within the confines of the rules, so they wrenched the

position to fit their ends. We shall analyze this position under each alternative.

■■■■ If Ortíz held a trust position, as his appointment papers indicated, the personnel law of Puerto Rico and the parallel regulations of the Bank accord no property interest to Ortíz. His fourteenth amendment claim would then fail. *Laureano-Agosto v. Garcia-Caraballo*, 731 F.2d 101, 103 (1st Cir.1984). Alternatively, Ortiz never was appointed to a career position. His appointment papers all read that the post he occupied was one of trust. Ortíz did not present any evidence that there had been any representations made to him that he would have a continuing interest in the position despite this classification. Accordingly, Ortíz did not possess the property interest that normally accompanies a career appointment under Puerto Rico civil service law or the parallel Bank personnel regulations. Without such a property interest, Ortíz had no right to procedural due process.

Plaintiff's evidence was that, after his loss in the Naranjito mayoral campaign, he applied for the position at the Bank on April 12, 1977, that the job was not publically advertised, that he took no examination, and that he started work that day. Minimal compliance with any sort of principled decisionmaking in the personnel arena is wholly lacking here. Again, what we have here is a batata política, whose furrow is well-hoed and watered before planting. The personnel regulations of the Bank were ignored to accommodate Ortiz. Along each path, then, Ortíz possessed no property interest in the position and therefore had no right to process. Ortíz' claim for violation of his fourteenth amendment right to procedural due process is DISMISSED.

### C. *Pendant Claims*

Plaintiff's complaint also claimed relief under antidiscrimination statutes of Puerto Rico. 29 L.P.R.A. §§ 136, 146. For the reasons elucidated above, however, this Court must find for the defendant. The pendant claims are DISMISSED.

Accordingly, having examined each of plaintiff's claims, this case is DISMISSED.

Judgment will be entered accordingly. IT IS SO ORDERED.