Simonne ELWOOD and Cheryl A. Pimental, Plaintiffs, Appellants,

v.

Ronald PINA and Lucia Cardoso, Defendants, Appellees.

No. 85–1630.

United States Court of Appeals, First Circuit.

Argued Oct. 8, 1986.

Decided March 31, 1987.

**174**

Gerard J. Clark with whom Jeffrey Petrucelly and Petrucelly & Nadler, P.C., Boston, Mass., were on brief, for plaintiffs, appellants.

Alexander G. Gray, Jr., Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants, appellees.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Plaintiffs-appellants were clerical employees at the District Attorney's office in Bristol County, Massachusetts. They instituted a 42 U.S.C. § 1983 action against the district attorney, Pina, and against his administrative assistant, Cardoso, contending that they were fired from their positions either for not supporting Pina's re-election campaign or because they supported his political opponents. The case was tried both under the first and fourteenth amendments, and under the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, §§ 11H, 11I (1979).[1] A jury returned a special verdict for defendants-appellees.

Before us is an appeal from the district court's denial of a motion to alter or amend the judgment, or alternatively, for a new trial. We affirm.

I

The first claim is that the district court erred in failing to instruct the jury on a purported constitutional right to social as-

---

**1.** Section 11H provides:

Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business.
Section 11I states:

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.
Defendants expressly waived below an Eleventh Amendment defense to the pendent state claim. *Cf. Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985).

sociation or friendship. In the charge to the jury, the district judge remarked:

> This is not a case about how political campaigns are run. It is not about how tickets are sold to fund raisers or how political campaigning is done or whether it's proper to do it in the office or outside the office or after hours or during hours or whether you're asked to hand out leaflets or stand at the polls ... It may even violate some campaign law, perhaps, but that is not why you are here.

> \* \* \* \* \* \*

> The last thing this case is not about is ... friendship. [T]he case is not about that *except as it affects your judgment on the political association question.*

> \* \* \* \* \* \*

> The question is not whether Cheryl Pimental and Simonne Elwood were terminated because they were friends of the State Police; because if you believe that ... is the reason they were terminated, because they were friends, the case is over ... That is not a Constitutional Right, to have friends.

> \* \* \* \* \* \*

> The Constitution doesn't say you are protected in all forms of association. It doesn't protect friendship, it doesn't protect camaraderie, [or] acquaintanceship.

> \* \* \* \* \* \*

> This is a termination of employment case because of political, constitutionally protected activity. [Emphasis supplied].

■ At oral argument appellants conceded that they failed to request a specific "friendship" instruction. This case was litigated exclusively on appellants' conten-

tion that their political-associational rights were violated. Plaintiffs' request for jury instructions on the Section 1983 claim was based on the principles established in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (public employees discharged for their political affiliation may state a claim for violation of their first and fourteenth amendment rights). Similarly, plaintiffs' objection to the jury charge did not clearly place the belated claim of a right to friendship before the trial judge. Mr. Nadler objected after the charge:

> I believe the instructions should be that, if that friendship itself *was perceived by the district attorney as political association,* that does allow friendship itself to be constitutionally protected. [Emphasis supplied].

The court correctly overruled this objection on the ground that it was repetitive of instructions already given by the court.[2]

During the deliberation process, the jury returned with the following inquiry:

> If [Elwood] was fired as a result of her nonpolitical friendship with the State Police who were active supporters of Pina's opponent, does this violate her constitutionally protected [rights]?

The court implied that such nonpolitical friendship would be unprotected activity. Counsel at this time again failed to request a specific "friendship" instruction. Appellants argue now that the complaint has preserved the "friendship" allegations, and that failure to instruct the jury on that theory constitutes plain error. We disagree.

■ Appellants did not satisfy the uncompromising language of Fed.R.Civ.P. 51.[3] In particular, counsel did not *distinct-*

---

**2.** The instructions provided in relevant part:

> The question is whether or not [defendants] were terminated because they refused to support Ronald Pina or he believed that they were supporting his opponent.
> ... the protected political activity is the failure to support Ronald Pina or the perception that [defendants] were supporting his opponent.

As stated before, the district judge charged the jury "... the case is not about [friendship] except as it affects your judgment on the political association question."

**3.** Rule 51 provides:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict,

*ly* state their grounds for the objection before the jury retired to deliberate. *See, e.g., Brown v. Freedman Baking Company, Inc.,* 810 F.2d 6, 9 (1st Cir.1987); *Jordan v. United States Lines, Inc.,* 738 F.2d 48, 51 (1st Cir.1984). Even assuming the friendship allegations were raised in the complaint, this cannot cure the waiver which results from a Rule 51 defect.

■ Nor do we find any "peculiar circumstances to prevent a clear miscarriage of justice," such as errors affecting the fairness, integrity or reputation of a judicial proceeding, which would permit our applying the plain error exception. *Brown,* at 9. *Morris v. Travisono,* 528 F.2d 856, 859 (1st Cir.1976). Appellants' reliance on *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) is misplaced. In *Fact Concerts, Inc.,* the question presented was whether reaching the merits of the issue before the district court, "could have been avoided simply by a reliance, under Rule 51, upon petitioner's procedural default." *Id.* at 255, 101 S.Ct. at 2753. In that case, despite that procedural defect, the district court did reach the merits. The Supreme Court ruled that where the district court reached the merits, "no interests in fair and effective trial administration advanced by Rule 51 would be served if we refused now to reach the merits ourselves," and thus proceeded to rule upon the merits on appeal. *Id.* at 256, 101 S.Ct. at 2754. But such is not the case before us. The district court adhered to Rule 51 and did not reach the merits of the "friendship" issue. So do we. *See City of Springfield, Massachusetts v. Kibbe,* —— U.S. ——, ——, 107 S.Ct. 1114, 1117, 94 L.Ed.2d 293 (1987). Moreover, we are hesitant to find an error "plain" where, as in this case, the *legal* basis for the proposed instruction (the claimed right to social association) is not "clearly established." *See City of Newport,* 453 U.S. at 254, 101 S.Ct. at 2753; *Morris,* 528 F.2d at 858–59. *Cf. Valdivieso Ortiz v. Burgos,* 807 F.2d 6, 7 (1st Cir.1986) (stepfather and siblings have no constitu-

tionally protected liberty interest in the companionship of their adult son and brother actionable under 42 U.S.C. § 1983).

## II

■ Appellants next assign error to the district court's "but for" instruction to the Section 1983 claim.

The judge charged:

Now [defendants] have the [ultimate] burden of proving ... by a preponderance of the evidence ... that they had [a] valid reason for firing the plaintiffs.

\* \* \* \* \* \*

For the plaintiffs to prevail in [this] case, you must expressly find that they could not have been fired *but for* their political activity, if they had another ground, an independent ground for their firings then the plaintiffs cannot prevail in this case. [Emphasis supplied].

Far from erroneous, this charge followed our reasoning in *Rosaly v. Ignacio,* 593 F.2d 145, 149 (1st Cir.1979), and the Supreme Court's in *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1978). Appellants' dubious claim is that *Rosaly* was wrongly decided. This is a tardy claim. This circuit has repeatedly reaffirmed the "but for" analysis of *Rosaly* and *Givhan* in different contexts. *See De Choudens v. Government Development Bank,* 801 F.2d 5, 7 (1st Cir.1986), *cert. pending,* (1987) (first amendment-political association); *Brasslett v. Cota,* 761 F.2d 827, 839 (1st Cir.1985) (unlawful retaliation in the exercise of free speech rights); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019–20 (1st Cir.1979) (claim for reinstatement for unlawful discharge under Age Discrimination in Employment Act); *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir.1979) (sex discrimination under Title VII of the Civil Rights Act). At least one other circuit agrees with us on this point. *See Wren v. Jones,* 635 F.2d 1277, 1285–86 (7th Cir. 1980), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 110 (1981) (first amend-

stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

ment-political association). We affirm our adherence to the "but for" standard.

### III

■ Appellants also claim that the instruction on the pendent state claim was erroneous. The district judge instructed the jury:

[The Massachusetts Civil Rights Act] prevents any person from interfering by threats, intimidation, or coercion or [from] attempting to interfere by threats, intimidation, or coercion with the exercise or enjoyment by any other person or persons of rights secured by the Constitution or laws of the United States [and of the Commonwealth].

\* \* \* \* \* \*

You must find from all the evidence whether or not there was an *intentional* intimidation, threat [or] coercion or *intentional* attempt to intimidate, threaten, or coerce by either or both Ronald Pina and Lucia Cardoso. [Emphasis supplied].

The Massachusetts Civil Rights Act was enacted in 1979. *See ante* at footnote 1. The legislature intended to provide a state remedy for deprivations of civil rights. *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 473 N.E.2d 1128, 1131 (1985). Because of its remedial purpose, Section 11I authorizes a private cause of action for violation of secured rights under Section 11H. Unlike Section 1983, the Commonwealth civil rights statute requires no state action. *Bell v. Mazza,* 394 Mass. 176, 474 N.E.2d 1111, 1114 (1985).

A person states a claim under the Act upon showing (1) "threats, intimidation or coercion" that (2) lead to a violation of a federal or commonwealth constitutional right or statutory provision. *See Batchelder,* 473 N.E.2d at 1130–31; *Bell,* 474 N.E.2d at 1115. *Cf. Daniels v. Williams,*

474 U.S. 327, ——, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) ("... in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right"). The limitation placed by the phrase "threats, intimidation or coercion" ensures against the creation of constitutional torts. *See Bell,* 474 N.E.2d at 1115.

In response to a certified question from this court, the Supreme Judicial Court of Massachusetts recently clarified the meaning of "threats, intimidation or coercion":

The statute imposes no express or implied requirement that an actor specifically intend to deprive a person of a secured right in order to be liable under the statute.

*Redgrave v. Boston Symphony Orchestra, Inc.,* 339 Mass. 93, 106, 502 N.E.2d 1375, 1383 (1987).

The court analogized the Massachusetts statute to Section 1983, which "contains no state-of-mind requirement," (as per *Daniels,* 106 S.Ct. at 664), and certified that the quoted language requires no showing of willfulness. *Id.* 502 N.E.2d at 1383. Accordingly, we find that the district court erred in requiring that the jury find specific intent to state a claim under the Act. Whether or not such an error is harmless is our next point of inquiry. Fed.R.Civ.P. 61.[4]

■ We will reverse a judgment when the erroneous instruction has affected "the essential fairness of the trial," or would have changed the outcome. *See McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1983); C. Wright & A. Miller, *Federal Practice and Procedure,* § 2886 at 291–92 (1973). We are convinced that, in spite of the erroneous instruction, the result would not have been different. The plaintiffs in this case did not prove a deprivation of the constitutionally protected right to political association—an *essen-*

---

**4.** Rule 61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modify-

ing or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*tial* element of the pendent state claim. The special verdict provided:

> Do you find that Simonne Elwood [and Cheryl Pimental] were fired by the defendant[s] ... because [they were] engaged in a constitutionally protected activity?
>
> ANSWER: "No."

Because the error did not prejudice plaintiffs' "substantial rights" or otherwise influence the jury's verdict, it was harmless. *See Connors v. McNulty*, 697 F.2d 18, 21–22 (1st Cir.1983).

## IV

The next assignment of error is to an evidentiary ruling. At the trial, plaintiffs attempted to introduce certain records of the Massachusetts Division of Employment Security for impeachment purposes. These records reflected telephone conversations between an investigative officer and defendant Cardoso, in which the reasons advanced by defendants for the terminations were put into question. The district court found that the information contained in these records had already been introduced as evidence at trial. The court, which also perceived that the introduction of the records would have an unfairly prejudicial effect, ruled that the records were cumulative, and thus inadmissible under Fed.R. Evid. 403.[5]

Evidence is cumulative if repetitive, and if "the small increment of probability it adds may not warrant the time spent in introducing it." 1 *Weinstein's Evidence* ¶ 401[07] at 401–47–48 (1985). Appellants have not challenged the finding of the district court to the effect that they were able to introduce the *substance* of the conversations through other admissible evidence. If an error at all, the exclusion of cumulative impeachment evidence was harmless. *Id.* ¶ 403[06] at 403–97; Fed.R. Civ.P. 61; *cf. de Mars v. Equitable Life Assur. Soc. of U.S.*, 610 F.2d 55, 62 (1st Cir.1979) (*admission* of cumulative evidence was harmless error).

*The judgment of the district court is affirmed.*

---

**5.** Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.