**Agatha MARSMAN, Plaintiff,**

v.

**WESTERN ELECTRIC COMPANY, now known as AT & T Technologies, Inc. and Local 1359, Communications Workers of America, Defendants.**

**Civ. A. No. 85–2898–WF.**

United States District Court,
D. Massachusetts.

Aug. 23, 1988.

---

Frederick T. Golder, Golder & Shubow, Boston, Mass., for Agatha Marsman.

Eleanor D. Acheson and David J. Kerman, Ropes & Gray, Boston, Mass., for Western Elec. Co.

Thomas F. Birmingham, Flamm & Birmingham, Boston, Mass., for Local 1395.

## MEMORANDUM AND ORDER

WOLF, District Judge.

This action, brought on June 14, 1985, is a suit by Agatha Marsman against Western Electric Company, now known as AT & T Technologies ("AT & T" or "the Company"), and Local 1395, Communications Workers of America ("Local 1395" or "the Union"). The amended complaint alleges that plaintiff's discharge by AT & T and the conduct of the Union in relation to her discharge constituted racial discrimination in violation of 42 U.S.C. § 1981 (Count I), and the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I (Count II). In addition, the amended complaint asserts that AT & T intimidated, threatened and harassed plaintiff in retaliation for complaining about an allegedly unsafe work environment, giving rise to an additional claim under Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I (Count VIII).[1]

Both AT & T and the Union have filed motions for summary judgment on the remaining counts against them. Plaintiff opposes these motions.

In addition, plaintiff filed a motion on January 28, 1987 to amend her complaint to add a claim against AT & T for handicap discrimination in violation of the implied covenant of good faith and fair dealing and the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I. AT & T opposes this amendment.

A hearing on the motions for summary judgment and the motion to amend was held on February 4, 1988. For the reasons stated below, the Company's motion for summary judgment on all claims against it, Counts I, II, and VIII, is allowed. In addition, the Union's motion for summary judgment on all claims against it, Counts I and II, is allowed. Finally, the plaintiff's motion to amend her complaint is denied.

## I. FACTS

Except where otherwise indicated, the following facts are undisputed. In September, 1979, Agatha Marsman, a black woman, became employed in the warehouse of AT & T in Southboro, Massachusetts. Because Marsman was an hourly-rated, nonsupervisory employee, the terms and conditions of her employment were covered by the collective bargaining agreement between Local 1395 and AT & T.

Marsman claims that between 1979 and 1981 she was subjected to repeated abuses from her co-workers and supervisors, including unpleasant assignments, vandalism of her car, and derogatory comments with racial overtones. On certain occasions during plaintiff's employment, she complained to company management that she was treated unfairly and harassed by some of her coworkers. Marsman did not inform the Company at any time that she believed the complained-of treatment was racially motivated.

Marsman's complaint specifically alleges that her co-workers purposely placed a sup-

---

1. The complaint also contained various other claims against AT & T that are no longer at issue before this court. At a hearing held on September 11, 1986, plaintiff agreed to dismiss Count III, which alleged a violation of public policy and a breach of the implied covenant of good faith. The court then dismissed Count IV, which alleged a claim for emotional distress, since it was preempted by federal law. The court also dismissed count VII, which alleged retaliation against Marsman by AT & T for complaining about an alleged unsafe work environment in violation of OSHA, since there is no private right of action under OSHA. Similarly, two claims against the Union are no longer at issue before this court. At a hearing held on February 4, 1988, the plaintiff agreed to dismiss Counts V and VI which allege violations of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412, and the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

posedly noxious powder at her work station. Beginning some time in July 1981, Marsman claims that she complained to her supervisors about the presence of hazardous substances in her workplace, specifically a gray powdered substance. Marsman did not, however, inform the Company of her belief that co-workers were responsible for the presence of the powder. Her supervisor, Thomas Higgins could not find the substance so he requested that Marsman see the company doctor, Sushil Gupta. Marsman saw Dr. Gupta in July and August of 1981. Dr. Gupta recommended that Marsman be transferred to the Company's Watertown facility and put on light duty. The Company arranged for the transfer. Throughout July and August, Marsman brought samples of the powder to Dr. Gupta. A laboratory analysis of the powder identified no harmful chemicals. It is undisputed that the Union was never informed about the powder at this time.

On September 23, 1981, Marsman was prevented from punching in to work and directed by the Company to report to the medical office for evaluation. Marsman's supervisor, Higgins, requested the medical exam because Marsman allegedly created a disruption on the night shift on September 21, 1981. Marsman denies creating a disturbance on September 21, 1981. She claims that on September 23, 1981, a manager accused her of creating a disturbance, ordered her to see Dr. Gupta, and then threw her out of the building. Marsman claims that the Company's contention that she was creating a disturbance on September 21, 1981 was false and was made as part of a conspiracy to force her to quit her position. When Marsman did not report for a medical exam, the Company placed her on personal time on a no-pay basis. Marsman asserts in her affidavit that she did not know that she was being placed on personal time. Rather, she claims that she was just thrown out of the building by a supervisor. The Company, however, has filed a letter dated September 29, 1981 from a manager to Marsman that explains that Marsman was put on personal time until she reported to Dr. Gupta.

On October 5, 1981, Marsman reported to Dr. Gupta for an examination as required by the September 29, 1981 letter. He found Marsman to be unfit to work, and she was placed on sickness disability as of October 5, 1981. She was then instructed to seek further psychiatric medical treatment from a physician of her choice or from a physician selected by the Company, and then to return to the Company's medical department for further review. Marsman refused to seek treatment.

The Company sent Marsman another letter on October 28, 1981. The letter reviewed Marsman's status of personal time between September 23 and October 5, 1981, and acknowledged that Marsman reported for a medical evaluation on October 5, 1981. The letter repeated the determination of the doctor that Marsman was unfit for work, and informed Marsman that an appointment had been set up for her with an independent psychiatrist, Dr. Mirin.

On November 2, 1981, Marsman went to see Dr. Mirin. On December 7, 1981, Dr. Mirin reported in writing to Dr. Gupta. Dr. Mirin's letter stated that he believed that Marsman should be allowed to return to work in "an environment in which she feels comfortable"; that the chances are good that she would function reasonably well; that he found no evidence of overt psychosis in his evaluation, although he agreed that Dr. Gupta's description of Marsman's difficulties with co-workers could be consistent with a diagnosis of paranoia; and that he disagreed with Gupta as to whether treatment should be required as a condition of returning to work. *See* Mirin Letter, December 7, 1981, Attachment to Marsman Affidavit. While stating that treatment should not be a precondition, Mirin stated that it was "naturally up to [Dr. Gupta]." *Id.*

Dr. Gupta chose not to follow Dr. Mirin's advice. Rather, he determined that treatment would be a precondition to Marsman resuming work.

As a condition of receiving sickness disability benefits from AT & T, an employee is required to submit to proper medical care and treatment. The Company claims that

Marsman refused to submit to further psychological treatment after her evaluation by Dr. Mirin, and the Company therefore determined that she was not meeting the conditions of the benefit plan. Personnel Chief Robert Whynot informed Marsman in writing on November 23, 1981 that her sickness disability benefits were being withheld because of her refusal to submit to treatment. Marsman contends that she refused to go to any other doctors after her appointment with Dr. Mirin because she believed that Dr. Gupta and the Company were harassing her, and trying to make her believe that she was crazy.

Marsman sought the Union's assistance with regard to the Company's insistence that she continue psychiatric evaluation as a condition of returning to work. The Union contacted Dr. Mirin and arranged with Dr. Mirin and the Company that Marsman could return to work if she would periodically "check-in" with the psychiatric nurse, without having to submit herself to psychological treatment or evaluation. Marsman rejected this proposal and, according to her, the Union did nothing further to remedy the problem.

On December 29, 1981, Whynot informed Marsman in writing that "her continued failure to receive proper medical treatment and her failure to contact her supervisor at least once a week of her status would require further action on the Company's part." Whynot Affidavit ¶ 7. Whynot also instructed Marsman in his December 29 letter to report to see a Dr. Quinn at an appointed time on January 11, 1982. Marsman did not go to see Dr. Quinn. She claims she never knew about the appointment. At her deposition, however, she admitted knowing about the appointment.

In the spring of 1982, AT & T learned that Marsman had been employed by Sears, Roebuck and Company during the fall of 1981 while she was placed on sickness disability at AT & T. Marsman asserts that the only reason she was not reporting for work at AT & T is because the company would not let her. Marsman also claims that she was working for Sears part-time during hours compatible with her work at the Company and that she had to because she was receiving no income from the Company. AT & T informed Marsman on June 14, 1982 that she had "voluntarily resigned" from the company as of November 13, 1981 due to her employment with Sears.

Marsman reported this development to the Union President and, according to Marsman, President Burns responded to this information by stating "serves you right. You have no business working for Sears and Roebuck." Marsman Deposition Vol. III p. 544. Marsman requested that the Union write a letter to the company setting forth her position. The Union complied by sending a letter. No formal grievance, however, was filed challenging Marsman's termination.

On June 14, 1985, Marsman filed this action which alleges that Marsman's employment was terminated by AT & T because she was black and in retaliation for her complaints about an unsafe workplace. In addition, Marsman alleges that the Union failed to adequately represent her because she was black.

## II. CONCLUSIONS OF LAW

### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). "[T]he court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 928 (1st Cir.1983).

> Functionally the theory underlying a motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict. The crux of both theories is that there is no genuine issue of material fact to be determined by the trier of fact, and that on the law applicable to the established facts, the movant is entitled to judgment.

*Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 198 (1st Cir.1983) (quoting 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.02[10] at 56–43 (2d ed. 1985)).

"[T]o defeat a summary judgment motion, the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would bear the burden of proof at trial." *Kaufman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1171 (1st Cir. 1988). A genuine issue is "one in which the party opposing summary judgment provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Perez De La Cruz v. Crowley Towing & Transportation Co.*, 807 F.2d 1084, 1086 (1st Cir.1986) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "Thus, summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case." *Kaufman*, 841 F.2d at 1172.

Finally, while "[a] court must be 'particularly cautious' about granting summary judgment when the state of mind of one of the parties is in issue ... the existence of a state of mind issue does not 'automatically preclude summary judgment.'" *Denton v. International Brotherhood of Boiler Makers*, 653 F.Supp. 55, 59 (D.Mass.1986) (quoting *Stepanischen*, 722 F.2d at 928–29)). The party opposing the motion must still offer "concrete evidence from which a reasonable jury could return a verdict in his favor." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. *See also Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975) (there must be some indication that the party opposing the motion "can produce the requisite quantum of evidence" to entitle him to a trial).

### B. *Applicable Statute of Limitations*

The applicable statute of limitations for plaintiff's claims under the federal Civil Rights Act, 42 U.S.C. § 1981 is the state limitation period governing personal injury. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Thus in this case, the limitation period is three years. M.G.L. c. 260 § 2A. Similarly, the statute of limitations for plaintiff's claims under the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I, is also three years.[2]

### C. *AT & T's Motion for Summary Judgment*

#### 1. *§ 1981: Count I*

In order to prevail under § 1981,[3] Marsman must prove disparate treatment resulting from "purposeful discrimination" based on race. *General Building Contractors Assoc. v. Pennsylvania*, 458 U.S. 375, 392, 102 S.Ct. 3141, 3151, 73 L.Ed.2d 835 (1982). As the Supreme Court stated, the evils with which Congress was concerned simply did not include practices that were " 'neutral on their face and even neutral in terms of intent' but had the incidental effects of disadvantaging blacks to a greater degree than whites." *Id.* at 388, 102 S.Ct. at 3149. Thus, a § 1981 claim is like a disparate treatment claim under Title VII. *T & S Services Assoc., Inc. v. Crenson*, 666 F.2d 722 (1st Cir.1981) (holding that *McDonnell Douglas* Title VII principles are applicable to a civil rights claim brought under 42 U.S.C. § 1981). As such, the plaintiff must prove "that she was treated differently *and* that the reason for the difference was her [race] ... Without the "but for" causal connection between the termination and the

---

**2.** The Massachusetts Civil Rights Act, like 42 U.S.C. § 1981, did not contain an express limitations period at the time plaintiff's cause of action accrued. However, a 1986 enactment of the General Court provides that all state civil rights claims are governed by a three-year statute of limitations. *See* M.G.L. c. 260 § 5B.

**3.** § 1981 states:

All person within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, license and exactions of every kind, and to no other.

protected status, plaintiff cannot recover." *Norton v. Vartanian,* 31 F.E.P. Cases 1259, 1262 (D.Mass.1983) (citing *Loeb v. Textron,* 600 F.2d 1003, 1019 (1st Cir. 1979)).

The burdens of proof for a § 1981 case are the same as those for a disparate treatment case under Title VII. *T & S Services,* 666 F.2d at 722. Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Marsman must establish a *prima facie* case of discrimination by a preponderance of the evidence.[4] The Court of Appeals for the First Circuit has recognized "that a complainant's initial burden of establishing a *prima facie* case of disparate treatment is not onerous." *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d 64, 70 (1st Cir.1984), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1980)). Indeed,

> [w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Accordingly, "a reviewing court 'need not linger long over the question of whether [the plaintiff] in fact established a *prima facie* case' if the defendant has met its burden of articulating a legitimate non-discriminatory reason for its actions." *Johnson,* 731 F.2d at 70, (quoting *Sweeney v. Reasearch Foundation of S.U.N.Y.,* 711 F.2d 1179, 1184 (2d Cir.1983)).

Once the plaintiff establishes a *prima facie* case, "[t]he burden then ... shift[s] to the employer to articulate some legitimate, non-discriminatory reason for the [challenged action]." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

The defendant's burden to "articulate" a legitimate reason is not a burden to persuade the court that he was in fact motivated by that reason and not by a discriminatory one. "Rather, it is a burden of *production*—i.e., a burden to *articulate or state* a valid reason." ... The defendant can accomplish this by introducing "admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus." ... Defendant's burden of production can be met if the evidence presented by him setting forth the reasons for rejection of the plaintiff "raises a genuine issue of fact as to whether [defendant] discriminated against plaintiff." ... Finally, the defendant's explanation of its reasons must be clear and reasonably specific.

*Johnson,* 731 F.2d at 70 (citations omitted).

Once the employer articulates a legitimate, nondiscriminatory business reason for its action, any inference of discrimination arising from the plaintiff's *prima facie* case dissolves, and the burden shifts back to the plaintiff to prove by a preponderance of the evidence "that the proffered reason was not the true reason for the employment decision." *Johnson,* 731 F.2d at 70–71 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). In other words, the plaintiff must show that the employer's articulated reason "was a pretext for discrimination." *Johnson,* 731 F.2d at 71. At this stage, the plaintiff's burden of proving pretext

> merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. [The plaintiff] may succeed in [proving pretext] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's prof-

---

**4.** A *prima facie* case of race discrimination is made by showing that 1) plaintiff belongs to a racial minority; 2) plaintiff was qualified for her job; 3) plaintiff was demoted or discharged; and 4) the employer sought a replacement for her. *See, Menzel v. Western Auto Supply Company,* 848 F.2d 327, 328 (1st Cir.1988); *Loeb v. Textron,* 600 F.2d 1003, 1014 (1st Cir.1979).

fered explanation is unworthy of credence.

*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

The plaintiff may prove pretext "by demonstrating that the reason advanced [by the defendant] applied to other employees who did not have plaintiff's 'protected' characteristics, but that they were not rejected or fired." *Loeb,* 600 F.2d at 1014. However, a plaintiff "cannot meet his burden of proving 'pretext' simply by refuting or questioning the defendants' articulated reason." *White v. Vathally,* 732 F.2d 1037, 1042 (1st Cir.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984). As the Court of Appeals for the First Circuit stated,

> Merely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent, for "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons" in the first place. To hold otherwise would impose an almost impossible burden of proving "absence of discriminatory motive."

*Id.* 732 F.2d at 1043 (quoting *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1094). *See also Schuler v. Polaroid,* 848 F.2d 276, 281 (1st Cir.1988); *Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987). In addition,

> it is not enough for the plaintiff to show that the employer made an unwise business decision or an unnecessary personnel move. Nor is it enough to show that the employer acted arbitrarily or with ill will. These facts, even if demonstrated, do not necessarily show that [race] was a motivating factor.

*Gray v. N.E. Tel. and Tel. Co.,* 792 F.2d 251, 255 (1st Cir.1986).

Finally, in the context of summary judgment, the Court of Appeals for the First Circuit has specifically stated that "evidence contesting the factual underpinnings of the reason for the discharge proffered by the employer is insufficient without more, to present a jury question." *Dea,* 810 F.2d at 15. Rather, "[p]laintiff continues to carry the burden of showing discriminatory intent, and the relevant question is whether the given reason was a pretext *for discrimination.*" *Id.* (emphasis added).

■ As an initial matter in this case, AT & T correctly argues that Marsman's allegations concerning events occurring prior to June 14, 1982 are barred by the applicable three year statute of limitations since the case was filed on June 14, 1985. *See Goodman,* 107 S.Ct. 2617. Thus, the only employment action for which Marsman can seek a remedy under her federal and state civil rights claims in Counts I and II is the Company's decision on June 14, 1982 to treat Marsman's acceptance of another job with Sears at a time when she was on sickness disability leave from the Company as a resignation from her Company employment. The remaining allegations contained in plaintiff's complaint and expounded in her deposition testimony—including plaintiff's complaint about her job assignments, her overall work environment, and the whole range of Company management and medical determinations concerning plaintiff's fitness to perform her job duties—cannot give rise to any actionable wrongs under the pertinent civil rights laws because all of these incidents and actions occurred before June 14, 1982. Such incidents can, however, be used as evidence of an improper motive for the June 14, 1982 employment termination. *See, Cajigas v. Banco de Ponce,* 741 F.2d 464, 470 n. 13 (1st Cir.1984); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Thus, the court must analyze Marsman's claims in light of the incidents preceding the termination.

■ In the case at bar, AT & T assumes for the sake of argument that Marsman has established a *prima facie* case. AT & T claims, however, that while it has met its burden of production by demonstrating that there were legitimate nondiscriminatory reasons for the employment actions, Marsman has failed to offer adequate evidence to suggest that the proferred reasons were pretext, and that AT & T's actions were motivated by racial animus. AT & T's asertions are correct.

AT & T has proferred three reasons for the actions the Company took regarding Marsman. First, in the Company's answers to plaintiff's interrogatories, and in the affidavit of Robert Whynot, a Company manager, AT & T maintains that Marsman was removed from her active job duties on September 23, 1981 and directed to obtain medical evaluation because she had exhibited disruptive conduct on her work shift. AT & T Response to Request for Admission, Nos. 12, 14. Second, the Company states that plaintiff's disability benefits were suspended as a result of her failure to obtain the medical care and treatment requested by the Company as required by the collective bargaining agreement. Whynot Aff. ¶¶ 5, 6. Third, the Company contends that it deemed plaintiff's employment to have ended on June 14, 1982 because the Company learned that plaintiff had accepted a job with another employer during a period in which she was placed on sickness disability benefits by the Company. AT & T Response, No. 23; Whynot Aff. ¶ 8. These proferred reasons satisfy the Company's burden of production. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ In response to the Company's explanation, Marsman disputes the fact that she caused a disturbance on September 23, 1981 that precipitated the Company's request that she seek medical assistance. *See* Plaintiff's Ans. to Interrog. No. 21. Marsman also claims that she only missed doctor's appointments that she did not know about, (Marsman Aff. ¶ 5) and that she refused to go to any other doctors after she saw Dr. Mirin because she believed that Dr. Gupta and her supervisors were trying to make her believe that she was crazy. Marsman Aff. ¶ 6. With respect to her job at Sears, Marsman states that she went to work for Sears because she hadn't received any money from AT & T since September 23, 1981. Despite the Company's letters to the contrary, Marsman claims that she was not on disability leave but rather was locked out and prevented from returning to work by AT & T. Marsman Aff. ¶ 2. Moreover, Marsman contends that the Sears employment was only part-time and would not have conflict-

ed with her hours at AT & T. *Id.* at ¶ 7. Thus, Marsman challenges the facts underlying the reasons given for the Company's termination decision. As the First Circuit has made clear, however, merely "contesting the factual underpinnings of the reason for the discharge ... is insufficient, without more, to present a jury question." *Dea*, 810 F.2d at 15. Rather, Marsman must also carry her burden of showing discriminatory intent. *Id.*

Marsman testified at her deposition that various supervisors took actions which were racially motivated, but she was unable to articulate any objective fact or circumstance to support her conclusory allegations of race discrimination. When Marsman was examined concerning the basis for her claim that the Company managers who participated in the decision to terminate her employment (Kolb, Whynot and Higgins) were motivated by racial discrimination, she could not set forth any objective facts to support her belief with respect to any manager, and further conceded that she had never met or had any personal contact with Douglas Kolb, the Company manager who wrote plaintiff the letter of June 14, 1982 advising her that the Company deemed her to have resigned her employment. *See* Marsman Dep. Vol. III, 409–413, 416–417, 419–21.

Moreover, Marsman also alleges that she was subjected to several instances of harassment by co-workers. Again, however, she has not put forth any evidence to suggest such harassment was motivated by racial animus, or that the coworkers were conspiring with management to force Marsman to resign. First, Marsman testified that she was unfairly assigned to the job of "stock and staging," a warehouse task requiring substantial manual labor which plaintiff alleges had not been assigned to women prior to her employment and should not have been assigned to women. Plaintiff admitted, however, that the job assignments on her shift were rotated among the workers and that for each rotation period, the order in which employees got to select their job assignments was determined by employee seniority. Nevertheless, plaintiff

asserts that her male co-workers conspired and were entirely responsible for her assignment to stock and staging. When asked why her male co-workers treated her unfairly she conceded that she did not know whether they were motivated by her race. *See* Marsman Dep. Vol. II, pp. 189, 197–207; Vol. III, p. 450–53, 462–64.

Marsman also testified that in June or July 1981, she complained to the Company's Personnel Supervisor, Robert Whynot, that someone had tampered with her car in the Company parking lot. Whynot told Marsman to speak to her supervisor, Susan Russell. Marsman stated that she refused to discuss the alleged car incident with Russell even though Russell inquired about it. Marsman Dep. Vol II, pp. 215–20.

In addition, Marsman alleges that she heard a co-worker make racially derogatory comments to her about what people do in Roxbury, a primarily black section of Boston. Marsman Dep. Vol II, p. 208. Marsman claims that AT & T's failure to condemn such racially derogative comments demonstrates that Marsman's discharge was racially motivated. However, the record is devoid of any evidence that demonstrates that Marsman informed AT & T about the remarks made by her co-worker. While it is true that "an employer may not stand by and allow an employee to be subjected to a course of racial harassment by coworkers," *DeGrace v. Rumsfeld,* 614 F.2d 796, 803 (1st Cir.1980), AT & T cannot be held responsible for actions that were not brought to its attention and could not

reasonably have been discovered by AT & T supervisors. *Id.* at 804–05. Finally, Marsman stated that she was unaware of any white employees who were similarly situated to her and treated better, i.e., employees who had refused to seek medical treatment during disability leave and who had also secured part-time employment while on such disability leave. Marsman Dep. Vol. III, pp. 416–417, 419–21.

Thus, Marsman has failed to produce any evidence to suggest that her race "was a motivating factor" behind the Company's decision to terminate her employment. *See Gray,* 792 F.2d at 255. At most, Marsman has questioned the Company's articulated reasons for her termination and challenged the factual underpinnings of the reasons given. Without more, however, Marsman's allegations are insufficient to raise a genuine dispute over whether AT & T's reasons were pretext, and are therefore insufficient to survive a motion for summary judgment. *See Dea,* 810 F.2d at 15; *White,* 732 F.2d at 1042; *Gray,* 792 F.2d at 255. AT & T's motion for summary judgment on Marsman's claim under § 1981, Count I of the complaint, must therefore be allowed.

### 2. *M.G.L. c. 12 §§ 11H and 11I: Count II*

To prevail on her claim under the state civil rights statute, Marsman must demonstrate that her secured rights were interfered with by threats, intimidation or coercion.[5] Courts have interpreted the Massachusetts Civil Rights Act broadly.

---

5. § 11H:

Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment of any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct complained of occured or in the superior court for the county in which the

person whose conduct complained of resides or has his principal place of business.

§ 11I:

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in § 11H, may institute and prosecute in his own name or on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

In *Bell v. Mazza*, 394 Mass. 176, 474 N.E.2d 1111 (1985), the Supreme Judicial Court held that a secured right can be a right "secured by the Constitution or laws of the United States." *Id.* at 182, 474 N.E.2d 1111. Although what constitutes a threat or coercion should not be strictly defined, the statute should not be interpreted as creating a vast constitutional tort remedy. *Id.* This remedy is only available to situations where the derogation of secured rights occurs by "threats, intimidation or coercion." *Id.* Thus, "[a] person states a claim under [§ 11I] upon showing (1) 'threats, intimidation or coercion' that (2) leads to a violation of a federal or Commonwealth constitutional right or statutory provision." *Elwood v. Pina*, 815 F.2d 173, 177 (1st Cir.1987) (citing *Batchelder v. Allied Stores Corp.*, 393 Mass 819, 473 N.E.2d 1128 (1985)).

Marsman's complaint realleges all of her allegations in Count I for her basis for her state civil rights claim in Count II. As the complaint states, "The allegations contained in paragraphs 4–17 of Count I of the complaint also constitute a violation of General Laws Chapter 12 § 11I, in that the discriminatory acts complained of were threatening, intimidating, or coercive, and violated Marsman's rights under the Federal and Massachusetts Constitutions." Amended Complaint ¶ 21. Thus, Marsman is asserting that her secured right to be free from racial discrimination was interfered with by the Company through threats, intimidation and coercion.

As previously stated, AT & T argues that any allegations by plaintiff pertaining to alleged acts of harassment occurring prior to June 14, 1982 are time barred. To the extent that Marsman claims that the harassment and mistreatment by co-workers and supervisors during the period of September 1979 through September 23, 1981 constituted incidents of threats, intimidation, or coercion that resulted in management's requirement that Marsman seek medical treatment, the Company is correct. Marsman also asserted at oral argument, however, that the actual termination was performed in an intimidating manner since Marsman was prevented from coming back to work. Although this claim is not time barred, it too is without merit.

First, Marsman must show that the Company used "threats, intimidation or coercion". *Elwood*, 815 F.2d at 177. Marsman fails to offer any evidence to suggest that her actual termination constituted intimidation. Her mere allegation is not enough to raise a genuine issue. Indeed, a recent decision by the Massachusetts Appeals Court indicates that the "threats, intimidation, and coercion" requirement of the Massachusetts Civil Rights statute will not routinely be inferred in the typical employment dispute. In *Mouradian v. General Electric Company*, 23 Mass.App.Ct. 538, 543, n. 5, 503 N.E.2d 1318 (1987) *rev. denied*, 399 Mass. 1105, 507 N.E.2d 1056 (1987), the court, citing *Bell*, noted that an employee alleging discrimination arising out of his dismissal from employment must specifically allege the type of conduct which constitutes threats, intimidation or coercion. "Otherwise on the facts pleaded, every routine reassignment or transfer in employment could be a violation of G.L. c. 12 §§ 11H and 11I." *Id.* In this case, Marsman has not established any facts to support her allegation that her termination was unlike any other routine termination whereby an employee is not allowed to return to work. Although Marsman was required to continue medical treatment as a condition of returning to her job, and her termination was, in part, based on her failure to continue such medical treatment, the requirement was not used as a threat, or to intimidate or coerce her. Rather, the Company's requirement of medical treatment was consistent with the Company doctor's evaluation, and the applicable provisions of the collective bargaining agreement which require an employee on sickness disability to submit to medical treatment. *See* Whynot Aff. ¶ 5.

More importantly, in order to state a claim under the state civil rights statute, Marsman must also show that the alleged threats or intimidation "leads to a violation of a federal or Commonwealth constitutional right or statutory provision." *Elwood*,

815 F.2d at 177. Marsman's claim under the Massachusetts Civil Rights Act, therefore, cannot survive if her claim of racial discrimination in Count I does not survive since Marsman's complaint alleges that her right to be free from racial discrimination was interfered with by threats. Thus, since Marsman was not deprived of her right to be free from racial discrimination, *see supra,* discussion of Count I, none of the Company's alleged coercive or intimidating actions could have interfered with this right. Summary judgment on the Company's state civil rights claim, Count II, must therefore be allowed.

### 3. *M.G.L. c. 12 §§ 11H and 11I: Count VIII*

■ Count VIII alleges that AT & T threatened, intimidated and coerced plaintiff in retaliation for having complained about an allegedly unsafe work environment, in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I. Marsman therefore asserts that her First Amendment rights were interfered with by the Company's actions.

AT & T argues that Count VIII should be dismissed because it is barred by the applicable three year statute of limitations. Marsman alleges in her complaint that "Beginning sometime in July 1981, Marsman complained to her supervisors at the Company that it was hazardous substances in her workplace that made her workplace unsafe." Amended Complaint ¶ 35. Marsman claims that her fellow workers or supervisors placed powder in her work place to harass and or intimidate her and force her resignation. Marsman further alleges that the Company retaliated against her for complaints about the powder, *id.* at ¶ 35, and that she was "intimidated, threatened, and harassed because of her complaints." *Id.* at ¶ 37. In her opposition to summary judgment, Marsman states that as a result of her complaints, she was required to seek psychiatric treatment before she was allowed to return to work. AT & T correctly argues that this claim is barred by the three year statute of limitations.

At oral argument, however, Marsman also alleged that the September 14, 1982 termination of her employment was in retaliation for her complaints concerning the allegedly unsafe workplace. Marsman contends that her complaints were the beginning of the chain of events: after her complaints, she was sent to a doctor, and eventually discharged for failing to continue medical treatment.

In response, the Company persuasively argues that actions taken by the Company negate any inference of retailiation. First, the Company conducted an investigation into Marsman's allegations of an unsafe workplace. A company manager, Thomas Higgins, was told about Marsman's concern about the presence of "gray powder" in her work area. Higgins went to her work area, but could find no such powder. Higgins then referred Marsman to the Company physician, Dr. Gupta. Dr. Gupta examined Marsman, and sent the powder to be analyzed. Dr. Gupta informed Marsman that a laboratory analysis revealed that no harmful chemicals were found. Marsman Dep. Vol. 2, pp. 229–230. Dr. Gupta nevertheless recommended that Marsman be transferred to Watertown where she could perform light work duties. The Company arranged for this transfer. None of these events justify any inference that the Company took any retaliatory action against Marsman based upon her complaints about allegedly hazardous substances in the workplace. Thus, Marsman failed to produce evidence to put in dispute whether her termination constituted a threat, intimidation or coercion in retaliation for her exercise of free speech. Summary judgment for the Company must therefore be granted on Count VIII.

### D. *The Union's Motion for Summary Judgment*

#### 1. *§ 1981: Count I*

■ Marsman's claim of discrimination against the Union is primarily based on the Union's failure to remedy her exclusion from work in September, 1981 and her eventual termination in June of 1982 by AT

& T.[6]   As previously discussed, however, § 1981 protects only against intentional discrimination. *General Building Contractors Assoc.*, 458 U.S. at 392, 102 S.Ct. at 3151.   Thus, in order to prevail on her § 1981 claim against the Union, Marsman must show "that she was treated differently *and* that the reason for the difference was her [race]." *Norton*, 31 F.E.P. Cases at 1262.   The Union contends that Marsman has offered absolutely no evidence to support this claim and raise a genuine issue.   Thus, summary judgment for the Union is appropriate.

Assuming *arguendo*, that Marsman has established a *prima facie* case, the Union argues that it did all that it thought could be done on her behalf.   The record reveals that the Union attempted to assist Marsman in her objection to submitting to psychiatric treatment as a condition of returning to work.   The Union worked out a compromise so that Marsman only needed to "check-in" with Dr. Mirin's nurse from time to time.   Union's Answer to Interrog. No. 8; Marsman Dep. Vol. III at 535. Marsman rejected this compromise.   Marsman Dep. Vol III at 535.   When Marsman was terminated, the Union's President, Frank Burns, wrote a letter to the Company at Marsman's request.   However, the Union told Marsman that it agreed that the Company could terminate her for accepting alternative employment.   Thus, the Union argues that it has put forth a non-discriminatory reason for its failure to do more for Marsman (i.e. their failure to file a grievance).   As the Union points out, "While a [defendant]'s judgment or course of action may seem poor or erroneous to outsiders, the relevant question is whether the given reason is a pretext for illegal discrimination." *Loeb*, 600 F.2d at 1012 n. 6.

Although Marsman attempts to rebut these claims by asserting that the Union's failure to remedy her problems was the result of racial animus, in her deposition she could not point to a single fact to substantiate her beliefs.[7]   *See* Marsman Dep. Vol. III, pp. 551–557.   As another district court has stated,

> plaintiff's sincere belief, standing alone, does not raise a genuine issue about whether defendant discriminated against her ...   Throughout [her] deposition, plaintiff makes other allegations of discriminatory conduct.   However, these allegations are simply assertions of plaintiff's opinion.   No specific instance in which plaintiff was treated differently from a white person is mentioned, nor has plaintiff presented any facts tending to prove intentional racial discrimination on the part of defendant to support [her] position.

*Young v. Memphis Firefighters Assoc.*, 39 F.E.P. Cases 695, 697–98, 1985 WL5590 (D.Tenn.1985).

In a similar case before the Eighth Circuit, the court held that the plaintiff in a § 1981 action against a Union must offer evidence to prove that a Union's decision not to pursue a grievance was motivated by racial discrimination.   *Tate v. Weyerhaeuser Co.*, 723 F.2d 598 (8th Cir.1983) *cert. denied*, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984).   The court in *Tate* maintained that even if plaintiff had established a *prima facie* case against the Union, plaintiff failed in carrying the ultimate burden of proving intentional discrimination. As the court stated,

> [Plaintiffs] have the burden of proving that blacks were treated less favorably than similarly situated whites.   Absent such proof, the union need only articulate a legitimate reason for its actions. Unions are not required to pursue unmeritorious grievances.   *Vaca v. Sipes*, 386 U.S. 171 [87 S.Ct. 903, 17 L.Ed.2d 842] (1967).

*Id.* 723 F.2d at 607.

In this case, Marsman has neither challenged the underlying facts supporting the

---

**6.** Although Marsman also refers to other incidents of discrimination by co-workers prior to September 1981, it is undisputed that Marsman did not seek the Union's assistance regarding these matters, nor did she inform them of such problems. (*See* Plaintiff's Answers to Interrog. No. 10 at p. 5).

**7.** Indeed, Marsman's stated reason for believing that she was discriminated against by the Union President because of her race was simply, "Stands to reason." Marsman Dep. Vol. III, p. 552.

Union's articulated reason, nor offered evidence from which a discriminatory motive could be inferred.[8] Thus, even assuming that Marsman presented a *prima facie* case against the Union, Marsman failed to carry her burden of raising a genuine issue concerning pretext. With only Marsman's bare allegations of discrimination, summary judgment is appropriate. *See Manego v. Cape Cod Five Cents Savings Bank*, 692 F.2d 174, 177 (1st Cir.1982) (Upholding dismissal of plaintiff's § 1981 claim of disparate treatment because plaintiff "did not provide any support for his inference of discrimination."). The Union's motion for summary judgment on plaintiff's § 1981 claim, Count I, must therefore be allowed.

### 2. *M.G.L. c. 12 §§ 11H and 11I: Count II*

■ As previously stated, to prevail on her claim under the state civil rights statute, plaintiff must demonstrate that her secured rights were interfered with by threats, intimidation or coercion. *Bell v. Mazza*, 394 Mass. 176, 474 N.E.2d 1111. The Union clearly points out that in response to questions at her deposition, Marsman failed to identify any incident by the Union of anything that would resemble a threat, coercion or intimidation. *See* Marsman Dep. Vol. III pp. 557–562. At most, Marsman testified that she believed Union officials were "nasty" to her. *Id.* at 558. She testified, however, that they did not threaten or intimidate her. *Id.* at 558–562. Thus, summary judgment should be granted on this claim.

■ In addition, the Union argues that this claim should be preempted since it is really a federal claim for breach of the duty of fair representation. *See Vaca v.*

*Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Condon v. Steelworkers*, 683 F.2d 590 (1st Cir.1982) (holding that federal rather than state law governs actions involving union's rights and duties). The court concludes that this contention is correct.

### E. *Marsman's Motion to Amend*

■ On July 28, 1987, after discovery in this case had been complete, Marsman filed a motion to amend her complaint to assert a claim for handicap discrimination. Marsman contends that she was capable of performing each and every function of her job, provided that the Company afford her a reasonable accommodation for her handicap. Marsman alleges that her handicap is "the perception that she was crazy and/or in need of psychiatric treatment and counseling." Proposed Amended Complaint, ¶ 45.

Specifically, Count IX of Marsman's proposed amended complaint alleges a violation of Article 114 of the Amendments to the Massachusetts Constitution ("Article 114") which provides that "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from participation in, denied the benefits of, or be subject to discrimination under any program or activity within the Commonwealth." Marsman also claims that it is also a violation of "established public policy to terminate someone or to discriminate against someone in their employment because of a handicap." Id. at ¶ 52. Thus, Marsman alleges that her termination also violated the covenant of good faith and fair dealing under Massachusetts case law.[9] In addition, Count X of Marsman's proposed amended complaint asserts that the dis-

---

8. The Union in a supplemental brief alleges that plaintiff's claim is really one for breach of the duty of fair representation. Since the statute of limitations on such a claim is only 6 months, plaintiff here unsuccessfully attempts to assert its claim under § 1981.

9. For this proposition, Marsman cites *DeRose v. Putnam Mgmt. Co.*, 398 Mass. 205, 208–210, 496 N.E.2d 428 (1986) (an employee at will, whose employment is terminated for reasons contrary to public policy, may recover damages from his employer on the theory of breach of contract,

even in a case where the employer gains no financial advantage as a result of the termination). *See also Glaz v. Ralston Purina Co.*, 24 Mass.App.Ct. 386, 509 N.E.2d 297 (1987) (Recognizing the new exception to at-will contract terminations stated in *DeRose*, but finding that the exception is limited to circumstances where the termination was in retaliation for performing an important and socially desirable act, exercising a statutory right, or refusing to comment on an unlawful act).

criminatory actions complained of in Count IX were threatening, intimidating, or coercive in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and 11I.

Fed.R.Civ.P. 15(a) provides for the amendment of pleadings to which a responsive pleading has been served "only by leave of court ... and leave shall be freely given when justice so requires." However, leave to amend has been denied in cases where the defendant has been unduly prejudiced by the delay or the amendment is futile. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend is inappropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment ..."); *Serrano Medina v. United States,* 709 F.2d 104, 106 (1st Cir. 1983) (no abuse of discretion when trial court denied leave to amend since there was no justification for the delay in asserting the new claims and new claims would require additional research and discovery); *Span East Airlines Inc. v. Digital Equipment Corp.,* 486 F.Supp. 831, 835 (D.Mass. 1980) (leave to amend denied since defendant is unduly prejudiced by fact that the case has been pending for four years and defendant would need to reopen discovery to defend the new claim).

AT & T argues that Marsman's proposed amendment at this late date would subject the Company to substantial hardship and prejudice in defending the new claims, and in any event, would be futile. AT & T's assertions are correct.

First, AT & T persuasively argues that the issue of alleged handicap discrimination was not addressed in any fashion by the parties during the extensive discovery undertaken in this case. Nor was it raised by plaintiff's counsel at any time during the two years following the commencement of the action. Thus, despite plaintiff's assertion to the contrary, further discovery would likely be necessary to defend the new claims. Moreover, discovery at this late date would be difficult since the claims would require information regarding Marsman's alleged handicap and the Company's state of mind more than six years ago.

Second, it is questionable whether Marsman's proposed amendment was prompted by newly discovered evidence, as she asserts. A review of Marsman's allegations in proposed Counts IX and X indicates that plaintiff was aware of the factual predicate for these claims back in 1981 when the Company deemed Marsman unfit for work. Therefore, allowance of the amendment would unduly prejudice the defendant in this case. *See, Serrano Medina,* 709 F.2d at 106; *Span East Airlines,* 486 F.Supp. at 835.

It also appears that Marsman's proposed amendments could not survive a motion to dismiss and would therefore be futile. Count IX of Marsman's proposed amendment asserts a claim for handicap discrimination under Article 114 and the implied covenant of good faith. There is, however, no separate cause of action that can be maintained under Article 114. As the Court of Appeals for the First Circuit has recently recognized in *Grubba v. Bay State Abrasives, Division of Dresser Industries, Inc.,* 803 F.2d 746 (1st Cir.1986), only the Massachusetts Civil Rights Act provides the appropriate vehicle for relief from a violation of Article 114. *Id.* at 747–48. Similarly, no cause of action exists under the implied covenant of good faith and fair dealing. As the Court in *Grubba* stated,

Massachusetts does recognize a claim for breach of the implied covenant of good faith and fair dealing when a claimant shows that an employer's reason for discharge was contrary to public policy, ... but this cause of action exists only when there is no other adequate way to vindicate the public policy.... Because Massachusetts law provided another fully adequate means of vindicating its public policy against handicap discrimination in employment, [the Massachusetts Civil Rights Act], the district court properly dismissed Grubba's wrongful discharge claim.

*Id.* Thus, proposed Count IX could not survive a motion to dismiss.

Proposed Count X, alleging a cause of action under the Massachusetts Civil Rights Act, while stating a cognizable cause of action, is nevertheless futile since it is time barred by the applicable statute of limitation. The applicable statute of limitations for a claim under M.G.L. c. 12, §§ 11H and 11I is three years. *See supra,* note 2. The events described in the proposed amended complaint that give rise to the cause of action occurred in late 1981 and early 1982, and culminated in the termination of Marsman on June 14, 1982. Thus, Marsman's complaint is time barred unless the proposed amendment "relates back" to the date of her original filing of this action on June 14, 1985.

Fed.R.Civ.P. 15(c) provides in pertinent part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original complaint.

The test under Rule 15(c) is not, however, "merely temporal." *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). Rather, "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." *Id. See also* Wright and Miller, *Federal Practice and Procedure,* Civil § 1497 ("the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test ... the courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading.").

The applicable standard under Rule 15(c) is not met in this case. Marsman's original complaint, which asserts that Marsman was harassed and discriminated against because she was black, and retaliated against because she complained about an allegedly unsafe substance in her workplace, did not give the defendant any notice of the new claim she now asserts—that the Company failed to reasonably accommodate plaintiff's actual and perceived mental condition and handicapped status. Relation back would not, therefore, be appropriate. *See Campbell v. A.C. Petersen Farms, Inc.,* 69 F.R.D. 457, 461 (D.C. Conn 1975) (where original Title VII action related exclusively to race discrimination, plaintiff would not be allowed under relation back doctrine to obtain relief in amended complaint for sex discrimination based upon the employer's grooming standards: "this new allegation cannot be deemed to arise out of the 'conduct ... set forth in the original pleading.'"); *Pendrell v. Chatham College,* 386 F.Supp. 341 (W.D.Pa.1974) (former college professor alleging wrongful discharge from employment could not subsequently assert claims in amended complaint for defamation and trespass and obtain "relation back" simply because the new claims were based upon the same fact situation contained in original complaint: "... [Rule] 15(c) does not permit lawyers to endlessly answer the question: How many causes of action can you find in this fact situation?").

The proposed amendments to the complaint would, if allowed, unduly prejudice AT & T. The amendments would also be futile. Each of these grounds is alone sufficient to justify denial of the motion to amend.

## III. ORDER

For the reasons stated above, AT & T's motion for summary judgment is hereby ALLOWED; the Union's motion for summary judgment is hereby ALLOWED; Marsman's motion to amend her complaint is hereby DENIED.